# Ezzell *v.* The State.

## *Assault and Battery.*

(Decided April 22, 1915. 68 South. 578.)

1. *Assault With Intent; Elements.*—In determining whether one is guilty of assault with intent to murder, or of a simple assault or battery, or of neither, because of having acted in self-defense, the law applicable, is the law of homicide, and the evidence admissible in a prosecution for murder, is admissible in a prosecution for assault with intent to murder, because for a person to be guilty of such assault it must have been committed under such circumstances that if death had resulted the offense would have been murder; if the killing would have been manslaughter, the person perpetrating it is guilty merely of an assault and battery, and is guilty of nothing if the death would have been justifiable homicide.

2. *Homicide; Arrest; Killing Officer.*—One who kills an officer lawfully arresting him is guilty of murder.

3. *Same; Self-Defense; Resisting Arrest.*—One unlawfully sought to be arrested by an officer may not kill such officer without being guilty of murder or manslaughter, according to the circumstances, unless the killing becomes necessary as the affray progresses, where the attempted arrest creates no reasonable belief that an arrest will do great bodily harm, notwithstanding such an arrest may be resisted with force, within the limits of reasonable necessity.

4. *Arrest Without Warrant.*—Under sections 6267 and 6269, Code 1907, an officer has no authority, without a warrant, to arrest for a misdemeanor, or for a violation of a town ordinance, not committed in his presence, and if he attempts to do so he is guilty of an assault.

5. *Same; Right to Information.*—Under section 6270, Code 1907, where an officer arrests one without a warrant, he must inform the person of his authority, and of the cause of the arrest, under penalty of being guilty of an assault, unless such person is actually committing a public offense or is being pursued; but when such person knows of the official character of the officer, of the conditions for the exercise of such officer's authority, and of his purposes he must submit; and although a person may know such officer's official char-

[Ezzell v. The State.]

acter, unless he also knows or is notified of the purpose of the officer to arrest him, and the cause thereof, he may resist such officer as a personal assailant, even when such officer has lawful cause for the exercise of his official authority, as his official character protects him only when he purports to exercise it lawfully.

6. *Assault With Intent; Evidence; Former Quarrel.*—Where the evidence of defendant was that the peace officer, whom he shot, had drawn a pistol on him, saying nothing about any arrest, and the evidence of the officer himself was that he did not know of the presence of defendant until he was shot at, and that of the sheriff, who was the companion of the officer, was that such officer attempted to arrest defendant, evidence that the peace officer and the sheriff had been looking for defendant to arrest him on the charge preferred against him, although such charge constituted no defense, was admissible in evidence as a circumstance tending to rebut the contention that the officer feloniously assaulted defendant, and as tending to give an innocent character to the motive and conduct of the officer at the time of the shooting.

7. *Same.*—Evidence that the officer and defendant had quarreled previously to the alleged assault, on account of an arrest of defendant by the officer, was admissible as tending to show that such officer's feelings toward defendant were not good, and in explanation of assault upon defendant.

8. *Same.*—Where the officer admitted that his former arrest of defendant had created bad feeling between them, evidence as to the details of such arrest was not admissible.

9. *Same; Wounds; Confinement.*—The time that the assaulted party was confined to his bed as the result of his wound, is admissible as showing the gravity of his injuries—a matter to be considered by the jury in fixing the punishment in case they returned a verdict of guilt.

10. *Same.*—Where such evidence had been admitted defendant should have been allowed to show that part of the time that such officer had been confined to his bed, was due to his addition to the morphine habit or from other causes not attributable to his wounds.

11. *Same.*—Where defendant stated that his own feelings towards the assaulted officer were good, it was competent on cross-examination for the state to ask defendant if it was not a fact that the officer had arrested him many times, and that therefore defendant's feelings towards the officer were bad; and defendant having answered "No," the permitting of the question was harmless, if error.

12. *Same; Buying Weapons.*—The refusal of the court to permit the witness to state his uncommunicated purpose in buying shells and borrowing the gun with which he shot the officer was proper.

13. *Same.*—The defendant should have been allowed to testify that just before he borrowed the gun with which he did the shooting, that he heard the officer was mad, and was out hunting for him with a gun, as that fact might have a tendency to explain defendant's purpose in borrowing the gun, and also tended to support his evidence of self-defense.

14. *Same.*—It was error to permit the state to show that on occasions previous to the shooting, defendant had been in town with a

gun, notwithstanding threats made by defendant and acts accompanying them might have been shown, if part of the res gestæ.

15. *Same; Instruction.*—Charges asserting that under the evidence, which was not disputed, defendant was not guilty of any offense which authorized his arrest, and that if the officer was undertaking to arrest defendant at the time of the shooting, then under the evidence the defendant was under no legal duty to submit to the arrest, was properly refused as being calculated to mislead the jury where, under the evidence, the officer and another were in good faith attempting to arrest defendant on a charge not an offense in law.

16. *Same; Undue Prominence.*—Such charges were also properly refused as singling out and giving undue prominence to parts of the evidence.

17. *Same; Covered by Those Given.*—Error to reversal will not be predicated upon the refusal of charges substantially covered by written charges given.

18. *Same; Ignoring Issues.*—Although the officer had no right to arrest him at the time of the shooting, charges 3 and 4 were properly refused as ignoring theories supported by the evidence, upon which defendant might have been found guilty.

APPEAL from Franklin Circuit Court.

Heard before Hon. C. P. ALMON.

Oce Ezzell was convicted of assault and battery, and he appeals. Reversed and remanded.

The following charges were refused to defendant:

"(3) Under the undisputed evidence in this case Ezzell was not guilty of any offense which authorized his arrest.

"(4) If Barrett was undertaking to arrest Ezzell at the time of the shooting, then under the evidence in this case, Ezzell was under no legal duty to submit himself to arrest at the hands of Barrett."

The other charges mentioned are covered by given charges.

KIRK, CARMICHAEL & RATHER, and GEORGE P. JONES, for appellant.

W. L. MARTIN, Attorney General, and W. H. MITCHELL, Assistant Attorney General, for the State.

[Ezzell v. The State.]

THOMAS, J.—(1) For a person to be guilty of an assault with intent to murder, the offense here charged, the assault must have been committed under such circumsances that, if death had resulted, the offense would have been murder (Code, § 6309, and cases cited); if it would have been manslaughter, then the person is guilty of only assault and battery, and if it would have been justifiable homicide, he would be guilty of nothing. So that, in determining the degree of a defendant's guilt who is charged with an assault with intent to murder—that is, as to whether he is guilty of that or of a simple assault and battery—and in determining whether he is guilty of neither, because of having acted in self-defense, we are governed, as a rule, by the same principles as obtain in the law of homicide, and evidence that is admissible under such a charge is usually admissible under a charge of assault with intent to murder and vice versa. We will therefore, with a view to answering and clarifying some of the questions raised in this case, advert briefly to the law of homicide as applied to persons killing offiicers in resisting arrest; some of the evidence here tending to show that defendant shot the prosecutor in resistance of an attempted arrest.

(2) If an officer be killed by one resisting a lawful arrest, the killing will be murder.

(3) An unlawful arrest, or an attempt to make an unlawful arrest, stands upon the same footing as any other nonfelonious assault, or as a common assault and battery; hence the person against whom such unlawful attempt is directed is not bound to yield, and may resist with force, but he is not authorized to go beyond the force reasonably necessary to resist the assault; that is, to use force greatly disproportionate to the assault. If he does, then he himself becomes a wrongdoer, and if

death results from his act, he will be guilty of murder or manslaughter, depending on the circumstances of the case, unless the unlawful attempt to arrest him was persisted in by the officer and such violence was used in the effort that to kill the officer becomes necessary, or reasonably seems to be so, in order to save his own life or to prevent serious bodily harm to himself. In other words, the mere attempt to arrest unlawfully will not, where the attempt creates no reasonable belief that the officer seeking to make the arrest will do great bodily harm, excuse a homicide.—*Noles v. State,* 26 Ala. 31, 62 Am. Dec. 711; *Eiland v. State,* 52 Ala. 328; *Bostic v. State,* 94 Ala. 47, 10 South. 602; *Brown v. State,* 109 Ala. 90, 20 South. 103; *Dryer v. State,* 139 Ala. 119, 36 South. 38. As was well said in a late case by our Supreme Court: "It is better to submit to an unlawful arrest, though made with force, but not with such force as to endanger the life or limb, than to slay the officer." —*Adams v. State,* 175 Ala. 12, 57 South. 591. And again: "Where the person [sought to be unlawfully arrested] has no reasonable cause to apprehend any worse treatment than a legal arrest should subject him to, it is his duty to submit and seek redress from the law." —*Williams v. State,* 44 Ala. 41.

(4, 5) A lawful arrest may be made by an officer without a warrant for any public offense, whether misdemeanor or felony; or for a violation of a municipal ordinance, committed in his presence; or for a breach of the peace threatened in his presence; or when a felony has been committed; though not in his presence, by the person arrested; or when a felony has been committed and he has reasonable cause to believe that the person arrested committed it; or when he has reasonable cause to believe that the person arrested has com-

mitted a felony, although it may afterwards appear that a felony had not in fact been committed; or on a charge made, upon reasonable cause, that the person arrested has committed a felony (Code, §§ 6267, 6269; *Jones v. State,* 100 Ala. 88, 14 South. 772); but no officer has authority without a warrant to arrest for a misdemeanor, or for a violation of a town ordinance (*Jones v. State, supra*) not committed in his presence. If he attempts to do so, he is a trespasser; and, even in cases where he has authority to arrest without a warrant, he is also a trespasser, unless he inform the person he attempts to detain of his authority and of the cause of the arrest, except when such person is in the actual commission of a public offense, or on pursuit, and except when such person has knowledge of the official character of the officer and of the presence of the conditions for the exercise of official authority and of the officer's purpose.—Code, § 6270; *Brown v. State,* 109 Ala. 71, 20 South. 103; *Richards v. Burgin,* 159 Ala. 282, 49 South. 294, 17 Ann. Cas. 898; *Rutledge v. Rowland,* 161 Ala. 114, 49 South. 461; *Sanderson v. State,* 168 Ala. 109, 53 South. 109; *King v. State,* 89 Ala. 43, 8 South. 120, 18 Am. St. Rep. 89. And although the person may have knowledge of the official character of the officer, yet, unless he also has knowledge or is notified or informed of the purpose of the officer to arrest him and the cause thereof, such officer may be treated and regarded as a personal assailant, and his assaults resisted to the same extent, even when the officer has a lawful cause for the exercise of official authority, since he is only entitled to recognition and submission to as an officer when he purports to exercise official authority, and not when he acts merely in a private capacity and

from individual motives.—Code, § 6270; *Brown v. State, supra; Sanderson v. State, supra.*

(6) Barrett, the officer alleged here to have been assaulted by the defendant, makes no pretense that, at the particular time he was assaulted, he was attempting to arrest defendant—in fact, his testimony tends to show that at that particular time he had just given up the search and was en route home, when he was suddenly and unexpectedly attacked by defendant, who, without a word passing between them, shot at him. In view of this testimony, we think it was competent for the state to show that for some half hour and up to and shortly before the shooting, Barrett had, as an officer, in conjunction with the sheriff, whom he had summoned to assist him, been looking for defendant for the purpose of arresting him, as there was also evidence tending to show that defendant knew this. If he did, the evidence was certainly admissible, as tending to establish an immediate motive for defendant's act. And while the charge upon which Barrett and the sheriff were seeking to arrest the defendant without a warrant —that is, that "he was in town drinking and had a gun"—constitutes neither a felony nor a misdemeanor under the state law (Code, § 6770; *Lollar v. State,* 167 Ala. 112, 52 South. 745), nor is there any proof going to show that it was a violation of the ordinances of the town of Russellville, where defendant shot said Barrett, and consequently such charge could furnish no authority to Barrett for arresting defendant, yet we think it was competent for the state to prove that such charge had been made against defendant to Barrett, as an official, and that this was the alleged offense for which he and the sheriff were so looking for defendant.

Defendant testified that he did not attack Barrett as the latter claimed, but that Barrett attacked him suddenly, confronting him with a drawn pistol, saying: "O, yes; G—— d—— you. Stop, G—— d——·you,"—and that Barrett said nothing about a purpose to arrest him, and that in view of the fact of the bad feeling previously existing between him and Barrett, he shot as Barrett raised his pistol, and to defend himself assuming that Barrett in his personal capacity was· seeking to feloniously assault him and was not acting as an official and attempting to arrest him.

The sheriff, who was present, testified·that Barrett exhibited no pistol, but said to defendant, "Lay down that gun," and that defendant immediately shot Barrett.

We, therefore, have three versions of the affair—that of the defendant, that of the sheriff, and that of Barrett—the defendant's testimony tending to show a personal assault on him by Barrett, the sheriff's testimony tending to show an attempt by Barrett to arrest·defendant, and Barrett's testimony tending to show an absence of any knowledge on his part of even the presence of defendant until defendant was in the act of firing at him, and that he was fired at twice by defendant, and that defendant then left before he (Barrett), who was injured by the shots, could or did say or do anything.

As to what took place and as to who was the aggressor, as well as the character of the aggression, at the time of the shooting, was a material inquiry for the jury in the case, and whatever facts tended to shed light on that question, without obtruding upon the minds of the jury· matters which were foreign or of doubtful pertinency, were admissible. The fact that Barrett and the .sheriff had been and were in good faith looking for

defendant to arrest him on a charge made, although the matters charged constituted no offense, was a circumstance tending to rebut defendant's contention that Barrett feloniously assaulted him, and tending to give an innocent character to the motive and conduct of Barrett at the time of the shooting, and to shed light upon and aid in the interpretation of his acts at such time. —*Rigell v. State,* 8 Ala. App. 52, 62 South. 977; *Storey v. State,* 71 Ala. 329 (13th and 14th headnotes) ; *Gafford v. State,* 122 Ala. 62, 25 South. 10.

(7) The defendant, as tending also to shed light on Barrett's alleged assault and as explaining its motive and character, had a right to show that for some time previous thereto the feeling of Barrett towards him had not been good (*Holmes v. State,* 100 Ala. 80, 14 South. 864), and to this end he might show the fact of a former altercation or difficulty between them, but not the merits or details thereof.—*Gray v. State,* 63 Ala. 66.

(8) Barrett, however, admitted the ill feeling. He testified: "I do not remember that we had spoken since he [defendant] was arrested and put in jail [by me on a previous occasion]. It had been maybe a month since we had spoken, and I had seen him frequently. I had not spoken to him, nor he to me."

The court committed no error, therefore, in declining to permit defendant, on further cross-examination, to show that Barrett, in effecting the arrest of defendant on the previous occasion referred to, used unnecessary force, and assaulted and knocked defendant down and trampled upon him.

(9) It was competent for the state to show the length of time that Barrett was confined to his bed as a result of the wounds inflicted by the defendant at the time of the assault here charged. Such evidence tended to

show the gravity and seriousness of the injuries—a matter proper for the consideration of the jury in fixing the amount of the punishment in the event they found defendant guilty of either assault and battery or assault with intent to murder.

(10) If a part of the time Barrett was so confined to his bed was due to his addiction to the morphine habit, or other cause not attributable to the wounds inflicted by defendant, the defendant should have been allowed to show this.

(11, 12) The defendant stated that his own feelings toward Barrett were good. The court did not err, therefore, in permitting the state on cross-examination to ask the witness: "Is it not a fact that Barrett arrested you time and time again, and that there are cases now pending against you where he arrested you, and that by reason of that your feeling towards him is bad?"—*Garden v. State*, 84 Ala. 417, 4 South. 823.

If, however, there was any error in permitting the question to be asked, it was harmless, as it appears the witness answered in the negative.

(13) The court committed no error in declining to let the defendant state as to his uncommunicated purpose or intention in buying the shells and borrowing the gun with which he shot Barrett.—*Harris v. State*, 8 Ala. App. 33, 62 South. 477; *Hardin v. State*, 8 Ala. App. 125, 63 South. 18.

(14) He should have been permitted, however, to testify that just before he borrowed the gun in town that day he had heard that Barrett was mad and was out hunting for him with a gun, as this was a fact tending to explain defendant's purpose in also getting a gun, and tending to support defendant's evidence of self-defense.—1 Mayf. Dig. 838, § 2.

(15) While the state might prove any threats made by defendant against Barrett, and under some circumstances the acts accompany those threats, if a part of the res gestæ of them, yet certainly it was error to permit the state, as here, to show that on several previous occasions defendant was in town with a gun.—*Harkness v. State,* 129 Ala. 71, 30 South. 73; *Willingham v. State,* 130 Ala. 35, 30 South. 429; *May v. State,* 167 Ala. 36, 52 South. 602.

(16) Charge 1, refused to defendant, if not bad as argumentative, is covered by given charges 8, 14, and 22.

Charge 2 refused to defendant was covered by given charge C.

(17-19) Charges 3 and 4, refused to defendant, while asserting correct propositions, were properly refused under the facts of this case, as being calculated to mislead and confuse the jury, and as singling out and giving undue prominence to a part of the evidence and as ignoring theories, supported by the evidence, upon which defendant would be guilty, as hereinbefore pointed out, notwithstanding Barrett had no right to arrest him, as asserted in the charges.

For the errors pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.