## JOHNSON v. STATE. (1 Div. 502.)

(Court of Appeals of Alabama. March 6, 1923.)

**1. Arrest 68—One arrested without warrant must be informed of authority for and cause of arrest.**

Under Code 1907, §§ 6269, 6270, officers are authorized to make arrests without a warrant in certain instances, but in doing so they are required to inform the person arrested of their authority and the cause of the arrest, otherwise the person being arrested is under no duty to submit.

**2. Arrest 68—Purpose of statute authorizing arrest without warrant stated.**

The purpose of Code 1907, § 6270, requiring an officer arresting without warrant to inform of his authority and cause of arrest, is to inform the person whose arrest is sought that the arrester is an officer and the cause for which an arrest is sought, and both purposes must be fulfilled, it being incumbent on the officer to make them known, unless the facts in evidence show that the person sought to be arrested was informed of the facts, or unless the attending circumstances were such as to render giving of the information, or an attempt to give it, unavailing.

**3. Homicide 184—Admitting evidence of deceased's former acts as deputy sheriff held error.**

In a prosecution for murder of a deputy sheriff, where there was no evidence that deceased, in attempting to arrest defendant, disclosed either his authority or the cause for the arrest, and there being no presumption that defendant knew of deceased's appointment as special deputy, admitting evidence of the sheriff

that a year or two before the killing of deceased, the sheriff with deceased made search for defendant in his neighborhood,. was error, there being nothing to show that this search was ever brought to defendant's knowledge.

**4. Criminal law ⊂⇒369(3)—Sheriff's statement of defendant's name being on list of army deserters irrelevant and prejudicial.**

In a prosecution for murder, it was error to overrule objection to a question to the sheriff as to whether he had a government list on which defendant's name appeared as a deserter, it being irrelevant.

**5. Witnesses ⊂⇒337(6) — Overruling objection to question to defendant as to being army deserter held prejudicial.**

In a prosecution for murder, it was error to overrule an objection to question to defendant while on cross-examination as to whether he was a deserter from the United States service.

**6. Criminal law ⊂⇒369(1)—Evidence of independent offenses inadmissible.**

Evidence showing the commission by defendant of a separate and independent offense from the one for which he is being tried is inadmissible.

**7. Arrest ⊂⇒68—Duty of one arresting without warrant stated.**

In attempting to arrest a person without a warrant, unless the offense is committed in the officer's presence, it is the officer's duty to inform the person attempted to be arrested of his authority and the cause for his arrest.

**8. Criminal law ⊂⇒763,.764(23)—Charge held not objectionable as on effect of evidence.**

In a prosecution for murder of a deputy sheriff attempting to make an arrest without a warrant, where there was no evidence from which the jury could conclude that defendant was chargeable with knowledge that deceased was an officer, a charge that under the evidence the jury are not justified in finding that defendant knew of the official character of deceased, was not objectionable as being on the effect of evidence. Code 1907, § 5362.

Appeal from Circuit Court, Monroe County; John D. Leigh, Judge.

Willis Johnson was convicted of murder in the second degree, and he appeals. Reversed and remanded.

The following charges were requested by and refused to the defendant:

"Charge C. The court charges the jury that in attempting to arrest a person without a warrant, unless the offense is committed in the officer's presence, it is the duty of the officer attempting the arrest to inform the person attempted to be arrested of his authority and the cause of the arrest.

"Charge D. The court charges the jury that, under the facts shown by the evidence in this case, Gus Hightower was not authorized to arrest or attempt to arrest the defendant without informing defendant of his authority and the cause of the arrest.

"Charge E. The court charges the jury that, under the evidence in this case, the State has failed to show that Gus Hightower was legally authorized to attempt the arrest of the defendant, and that, in attempting to arrest the defendant, he was committing a trespass, which the defendant had a right to resist, provided such resistance was not greatly disproportionate to his threatened injury.

"Charge C—2. The court charges the jury that under the evidence in this case you are not justified in finding that the defendant knew of the official character of the deceased."

Hybart & Hare and J. D. Ratcliffe, all of Monroeville, for appellant.

If deceased was a regular deputy, his absence from the state for over a year rendered his appointment functus officio. 22 R. C. L. 560; 29 Cyc. 1404; 19 Ind. 356, 81 Am. Dec. 403. It was error to permit the sheriff to testify that he had a deserter's list, upon which the name of defendant appeared. 114 Ala. 25, 21 South. 127; 89 Ala. 150, 7 South. 824; 3 Ala. App. 318, 57 South. 494; 12 Ala. App. 196, 67 South. 781; 204 Ala. 467, 86 South. 46; 8 Ala. App. 414. 62 South. 997. Charges C, D, E and C–2 were correct and should have been given. 13 Ala. App. 156, 68 South. 578; 75 South. 816.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

It was permissible to introduce the affidavit and warrant charging defendant with a felony, in order to show a felony had been committed when the officer killed undertook the arrest. 204 Ala. 476, 85 South. 817. There is no requirement that the appointment of a deputy be in writing. Code 1907, § 5869. The defendant having answered in the negative to the question whether his name was on a deserter's list rendered the question harmless. There is no merit in the contention for error in the refusal of charges at defendant's request. 204 Ala. 476, 85 South. 817.

BRICKEN, P. J. The defendant was indicted for murder in the first degree, was tried, and convicted for the offense of murder in the second degree, and appeals.

We gather from the record and briefs of counsel that the insistence of the state was to the effect that the deceased, one Hightower, had been specially deputized by the sheriff to arrest the defendant on a charge of felony, alleged to have been committed in Clarke county, and that, while attempting to make said arrest, he was unlawfully shot and killed by this defendant.

The defendant admitted the killing of Hightower by him, but contended that he did so in order to save his own life, and that his action in so doing was justifiable under the law.

Numerous witnesses were examined upon the trial of this case, and the testimony contained in the transcript is more or less voluminous. But, notwithstanding this, there is an unusual lack of conflict in all the testimony.

It appears that the defendant and his wife were present at the cane mill and shop of Claude Johnson, an uncle of defendant, and together with several others, all of whom appear to have been examined as witnesses in this case, had been present about 25 minutes before the deceased was seen coming down the road, towards them, with an automatic shotgun. There is some testimony that some one present remarked, "Here comes Gus Hightower," but it does not appear that this remark was in the hearing of the defendant. As Hightower, the deceased, approached, the defendant and his wife passed around to the opposite side of the shop and were leaving the premises. Hightower stopped for a moment, spoke to state witness McArthur and shook hands with Conrad Johnson, and then followed after defendant and his wife to within 10 or 15 feet of them—these three being then some 30 or 40 feet removed from the shop. All the witnesses, both for the state and the defendant, agree that the deceased fired two shots at the defendant with an automatic shotgun before defendant fired in return. None of the witnesses heard deceased say anything to defendant before firing at him, or saw defendant make any hostile demonstration towards deceased before being fired upon by deceased. The witnesses for the defense swear positively that no words passed between deceased and defendant, and none of the state's witnesses contradict this testimony; it is without dispute that deceased approached defendant rapidly from the rear and fired upon him as he (defendant) turned in the path to face the deceased, and while the defendant was holding up his hands indicating surrender; that defendant was seriously wounded in the arm from this shot, he and his wife being knocked to the ground by the force of the first shot; that while defendant was on the ground, the deceased shot at him a second time at close range, but that defendant was saved from receiving this load by the action of his wife in knocking up the barrel of the gun; that the defendant did not fire until after this second shot from the deceased; that, after defendant had been shot down by deceased and again fired upon by him, the defendant managed to secure his pistol from his pocket and before regaining his feet fired upon Hightower, killing him. This testimony is without material dispute, and the physical facts of the wound, as testified to by state witness Dr. J. C. Christian, tends to corroborate the statement that defendant fired while in the position indicated. This witness, testifying among other things, said:

"The wound in his body ranged upward, the bullet—it entered on his left side in his short ribs, ranged upward, diagonally through his body, and I felt this bullet under his right shoulder blade. This was a fatal wound."

[1] As stated, the theory of the state was that the deceased had been specially deputized by the sheriff to arrest the defendant upon a felony charge alleged to have been committed in an adjoining county, and that, in attempting to so make the arrest he was killed by defendant. There was no pretense or insistence that Hightower, the deceased, had in his possession, at the time of the killing, a warrant, or other process, for the arrest of defendant, but the state insisted that he was authorized so to do under the terms of the statute. Section 6269 of the Code 1907. This section of the Code does authorize an officer to make an arrest without a warrant in the instances and under the circumstances therein enumerated; but in doing so he must comply with and conform to the law which gives him this authority, and the law requires that when he arrests a person without a warrant the officer must inform the person arrested of his authority and the cause of the arrest (Code 1907, § 6270), otherwise the person being arrested is under no duty to submit (Tarwarter v. State, 16 Ala. App. 140, 75 South. 816).

It is manifest that these statutes were enacted with the dual purpose of securing the execution of and submission to legal process and at the same time to protect the citizen from unlawful interference with his personal liberty. In this connection the Supreme Court of this state, in the case of Brown v. State, 109 Ala. 70, 91, 20 South. 103, 111, said:

"It is not the duty of a citizen to submit to any other than a lawful arrest. It has been said, the duty 'is found in the law side by side with the right of resistance to an unlawful one; and it is quite as important that no one should be unlawfully taken as that every one lawfully accused should be made to answer.' * * * It is not intended that he shall yield his person and liberty to the dominion of even a known public officer, certainly not to one unknown, upon his mere demand, who gives no information of his authority. If this were not true, no man would be safe from invasions of his personal liberty, and unlawful arrests would be made effectual."

Here, the case is much stronger for the defendant than the case quoted from because there is no pretense of any demand, or declaration of authority by the alleged officer at the time of the difficulty; nor is there any testimony that defendant knew deceased to be an officer, neither is there anything in the record from which this fact could be inferred. The only testimony bearing upon this question is that of the defendant himself, who stated positively: "I had not heard anybody say 'yonder comes Gus Hightower'

that morning. I did not know that Gus Hightower was a deputy sheriff. I had never heard of him being a deputy sheriff."

The Brown Case, supra, also holds that there is no presumption of law that the defendant knew of the appointment of deceased as special deputy sheriff, and was consequently chargeable with notice that his presence was for the exercise of official authority. It appears from the testimony of Sheriff Russell that a year or two before the killing of Hightower, he (the sheriff), together with Hightower and another, made search for the defendant in the neighborhood where many of the kinspeople of the defendant lived. But there is nothing to show that this search, remote at the time of the difficulty, was ever brought to the knowledge of defendant or that he knew anything whatever relative to the search made for him, and we do not think under these conditions that these searches had any legitimate tendency to charge the defendant with notice of any official character of deceased, especially in the total absence of any testimony showing or tending to show that defendant knew of these searches and the purposes thereof.

The defendant insists that deceased was not in fact an officer; that his removal from the state for practically a year after his appointment as special deputy, being at the time under indictment himself, rendered his appointment functus officio; and cites in support of this contention Chisholm v. Coleman, 43 Ala. 204, 94 Am. Dec. 677; State v. Jones, 19 Ind. 356, 81 Am. Dec. 403; 22 R. C. L. 560, and 29 Cyc. 1404. Under the view we take of this case, however, a decision of this question is unnecessary.

Questions similar to the ones presented here were ruled upon by the Supreme Court in Sanders v. State, 181 Ala. 35, 61 South. 336, where the defendant had killed the person seeking to arrest him. It was there held that it was the duty of the state to show that the deceased was legally authorized to attempt the arrest, and that—

"An attempt unlawfully to arrest gives the person sought to be arrested a right to resist, even to the extent of killing his opponent, if such killing is necessary to save his own life, or to save himself from serious bodily harm; but the necessity must have been real or apparent."

In Lewis v. State, 178 Ala. 26, 59 South. 577, our Supreme Court, speaking through Sayre, J., says that "the right of resistance to unlawful arrest" is a "phase of the right of self-defense," and "is essential" to our "form of government." In Adams v. State, 175 Ala. 8, 57 South. 591, the duty of the officer to make known his purpose and authority is emphasized, and the same case recognizes the right of a citizen to kill in resistance of an unlawful arrest, made with such force as to endanger life or limb.

"Although the person may have knowledge of the official character of the officer, yet, unless he also has knowledge or is notified or informed of the purpose of the officer to arrest him and the cause thereof, such officer may be treated and regarded as a personal assailant, and his assaults resisted to the same extent, even when the officer has a lawful cause, for the exercise of official authority, since he is only entitled to recognition and submission to as an officer when he purports to exercise official authority, and not when he acts merely in a private capacity and from individual motives." Ezzell v. State, 13 Ala. App. 156, 68 South. 578.

The same question was discussed by the Supreme Court in the civil case of Richards v. Burgin, 159 Ala. 282, 49 South. 294, 17 Ann. Cas. 898, where it was stated that—

"We have no hesitancy in holding that a plea of justification, under a warrant, fails to show a compliance with the statute in question, and is insufficient, unless it avers in terms that the officer gave information to the defendant of his authority, or avers such a state of facts as exempted him from imparting such information."

[2] As above stated, no facts here appear which exempted Hightower from imparting to defendant his authority and purpose to arrest him, if such was his purpose, and if he was so authorized. The manifest purpose of the statute is to inform the person whose arrest is sought that the arrester is an officer, and the cause for which his arrest is sought. Both purposes must be fulfilled, and it is incumbent upon the officer to make them known, unless the facts in evidence show that the person sought to be arrested was informed of the facts (Sanderson v. State, 168 Ala. 109, 53 South. 109), or unless the attending circumstances are shown to be such as rendered the giving of the information, or an attempt to give it, unavailing and unreasonable (Richards v. Burgin, supra).

[3] We are of the opinion that the court below erred in denying defendant's motion to—

"exclude from the jury the testimony of the sheriff as to the searches made by him and the deceased, Hightower, for the defendant about his father's premises and the premises of the other parties named in the testimony of the sheriff, because there is nothing brought out to connect it with the defendant, or to show notice to the defendant of such searches having been made for him by the deceased party, and nothing has been shown that would place him on notice that deceased was in any way attempting to make an arrest, or that he had any authority to arrest the defendant, and it is in no way connected with, and sheds no light upon, the question of whether or not the defendant knew or had reason to believe that the deceased was an officer and was of right seeking his arrest."

[4, 5] The defendant complains that he was prejudiced before the jury by the ruling of

the court in permitting the question to be propounded to the sheriff, over his objection and exception, if he had a list furnished him by the government upon which the name of the defendant appeared as a deserter. The sheriff answered over the objection of the defendant that he had. such a list, and the trial was twice suspended for him to make search for it. While the list itself was never produced as evidence, the sheriff did state, in the presence of the jury, that he had more than one of these lists upon which the name of the defendant appeared as a deserter. This was wholly irrelevant matter, and in its nature highly calculated to prejudice the minds of the jury against defendant. And for like reasons the objection should have been sustained to the question asked by the solicitor to the defendant on cross-examination, to wit: "The fact is, Mr. Johnson, you were a deserter from the service of the 'United States?" This question was upon its face patently illegal, irrelevant, and inadmissible. In the first place the question carried with it an assumption of fact that the defendant was a deserter from the United States army, moreover, such an inquiry had no place in the trial of this case and the manifest purpose of the unauthorized question was to discredit the defendant before the jury, and the court should have taken prompt action by not permitting an unfair inquiry of this character to burden the defendant's case before the jury. The fact that the defendant was forced to give answer and deny being a deserter was not sufficient to remove the injurious effects of this inquiry from the minds of the jury, as the sheriff had already been permitted to testify that he had had in his possession a deserters' list, upon which the name of this defendant appeared, and thus an immaterial, irrelevant, and highly injurious issue was improperly injected in the trial of this case.

[6] It is apparent from the record and briefs of counsel that, in the arguments to the jury, this unauthorized inquiry was made the subject of much discussion, and it is evident that the jury was much impressed that the court attached great importance to it. If it be true that the sheriff had such a list, it could not rise above the character of an accusation against the defendant, and the rule is that evidence showing the commission by the defendant of a separate and independent offense from the one for which he is being tried is inadmissible. 16 C. J. 586; Wickard v. State, 109 Ala. 45, 19 South. 491; Blevins v. State, 204 Ala. 476, 85 South. 817; Henson v. State, 114 Ala. 25, 22 South. 127; Phillips v. State, 3 Ala. App. 218, 57

19 Ala.App.—10

South. 1033; Maxwell v. State, 89 Ala. 150, 7 South. 824; Watson v. State, 8 Ala. App. 414, 62 South. 997; Rogers v. State, 12 Ala. App. 196, 67 South. 781. As stated by Judge Sayre in the Blevins Case, supra:

"Its admission was calculated to lead the jury to the conclusion that it was proper for their consideration and to stir their resentment against the defendant."

Nor did this inquiry come within the terms of the statute Code 1907, §§ 4008, 4009.

[7] Charges C and D, requested by the defendant, are correct statements of the law applicable to this case under the authorities above set out, and should have been given, unless fully covered by the oral charge or other given charges—which we do not find to be the case. If the circumstances attending the killing were such as to relieve the deceased from the duty of informing the defendant of his authority and purpose to arrest, these circumstances should have been made affirmatively to appear.

While charge 8 was approved by this court in Black v. State, 5 Ala. App. 87, 59 South. 692, following the Supreme Court in Twitty v. State, 168 Ala. 59, 53 South. 308, we are of the opinion that the oral charge of the court was sufficiently full on this subject, though not in the exact words of the requested charge.

Charge E is evidently a copy of charge 24, approved in Sanders v. State, supra, and sought to be made applicable to the facts in this case. We hold that the statement of Sheriff Russell to Hightower that he "wanted him to get busy and help me catch Willis Johnson" would have been sufficient authorization to Hightower to attempt the arrest, provided the sheriff had armed Hightower with the warrant of arrest, or if the evidence had shown that the sheriff had informed Hightower of the existence of the warrant charging murder. Neither of these facts appear in the evidence, and in their absence the charge was proper and should have been given.

[8] Charge C—2 was upon the effect of the evidence, but was not objectionable for that reason. Code, § 5362. This charge is similar to charge 20, approved in the Sanders Case, supra. We do not think that there was any legal testimony before the jury from which they could conclude that the defendant was chargeable with knowledge that deceased was an officer.

For the errors pointed out the judgment of conviction appealed from is reversed, and the cause remanded.

Reversed and remanded.