(117 So. 906)

BAGWELL v. STATE.   (6 Div. 308.)

Court of Appeals of Alabama.   June 26, 1928.

Rehearing Denied Aug. 7, 1928.

568

J. H. Bankhead, Jr., of Birmingham, and A. H. Carmichael, of Tuscumbia, for appellant.

Charlie C. McCall, Atty. Gen., for the State. Brief did not reach the Reporter.

BRICKEN, P. J. The evidence adduced upon the trial of this case in the court below was without material conflict. It disclosed, without dispute, that this appellant, a boy just past sixteen years of age, was out riding in his automobile with three other schoolboy friends on the Sunday afternoon in question and that while trying to fix the car, which at the time was stopped on the public road, the deceased, with two other young men and three young ladies, passed in another car, inquired if they could render any help, and upon being told "No" drove on. After this car had traveled some distance the defendant fired a pistol three or four times, one of the shots taking effect in the temple of deceased, who died several hours later in a hospital in another county.

. The evidence is conclusive that the occupants of both cars were upon friendly terms and the defendant and deceased were good friends, schoolmates, and playfellows. There was no semblance of evidence tending to show any difficulty, hard feelings, or ill will between the deceased and defendant or any of the other young people in either of the two cars. There was a total lack of any evidence showing or tending to show any motive or intention upon the part of defendant to do injury to the deceased or to any one else. Therefore but one deduction can be reached relative to the shooting, and that is, it was merely a thoughtless boyish prank upon the part of the defendant who was more or less under the influence of liquor, but was apparently in possession of his faculties.

It occurs to us from all the evidence in this case (in the event of a conviction) that an intelligent verdict thereunder would have been for manslaughter in the second degree; the apparently unintentional deplorable tragedy being the result of unlawfully discharging a firearm along or across a public road, in the first instance, in violation of section 5447 of the Code 1923, and in the second instance, shooting on Sunday, in violation of section 5539 of the Code. Manslaughter in the second degree, generally speaking, is the unintentional killing of another in the commission of an unlawful act. The killing being admitted, and the question of self-defense not involved, the degree of homicide, as well as the intent of the accused, were questions for the jury; but in determining these questions the jury were confined to the evidence adduced upon the trial, and that alone. It was strenuously insisted by the youthful defendant that the shooting of Jeffries was wholly unintentional and accidental, and he was allowed to testify, without objection:

"I am sixteen, and will be seventeen the 11th of October. I was raised here at Fayette; I am a high school boy, attending high school; I was acquainted with young Jeffries; he and I played ball together and play tennis together; we played tennis together Friday before this happened; we played partners; I knew him well, and liked him well; we were good friends, and had always been good friends; there never had been anything between he and I, no difference of any kind; I have always lived here, and so had he. I knew the folks in the other car, what you call the Jeffries car; I knew all of them; all of them were school folks, going to the same school; I knew of no difference between their crowd and my crowd; * * * I saw this Jeffries car drive up there and stop about three or four or five feet from us; I could see who was in there and knew everybody; I liked everybody in there; something was said by the Jeffries people to us; some one in the car asked did we need any help; we told them we didn't, and they drove on and left us there. * * * The pistol in the car belonged to Curt Branyon; the car I

was driving was my car; we were just riding around. When we started out the pistol was in the seat of the car, down by the side of the seat, lying in the car; I was driving and the pistol was on my side; I don't know how far the folks had gotten on up the road when I picked the pistol up; I think they were a good ways up the road; I hadn't watched them. I picked the pistol up out of the seat and those folks had gone on. I shot the pistol; I didn't point the pistol at the car; I didn't point it at anybody; I didn't shoot at anybody. I had the pistol shooting up. I was shooting to the right and up; I didn't point the pistol deliberately at this car as it went off; I didn't have anything in the world against any of those folks in there; I was not mad at them, they were friends of mine. I remember crying; I was shocked; very much grieved over it; I didn't just realize what had happened after they said some one was shot. We stayed there just a few minutes; I don't know how long, then we turned back; after they said some one was shot I was scared then; I didn't know what to do."

And upon cross-examination he stated:

"It was in the afternoon; I was out here on the road about three and a half miles from town; I was not shooting at anybody; I had the pistol pointing over to the right and shooting, over to the right of the road and shooting up; that's where I thought I had it. I know I wasn't shooting at anybody."

This, and other evidence of like import, was without dispute.

■ From the record it is evident that the accused was frightened and panic-stricken as a result of the unlooked-for tragedy, and upon cross-examination, over the objection and exception of defendant, the solicitor was permitted to ask him:

"Did you go—did you come on down to Fayette where the young man [Jeffries] was brought to see about him?"

To which he was required to answer, and did answer: "No, sir." There was error in this ruling. Lawler v. State (Ala. App.) 115 So. 420.[1] The tendency of this question and answer was to place the defendant in a position of extreme prejudice before the jury, and in this connection we think the insistence of able counsel for defendant in point where they state in their brief:

"The facts are that the defendant was only sixteen and one-half years of age; only six months removed from the jurisdiction of the juvenile court. The undisputed facts were almost sufficient, if not quite so, to justify instructions by the court that defendant was not guilty of more than manslaughter in the second degree. There was no motive for the killing. There was no ill will on the part of the defendant toward the deceased or any one in the car with him. At the time the shot was fired the car in which the deceased was riding was so far from the defendant that he could not, if he had been an accurate marksman, have hit the car with a pistol with many shots, if at all. It is further shown in the evidence that as soon as the defendant found that deceased had been hit the defendant immediately wept. As a mere child he was upset and frightened and confused and did not know what to do. Immediately after getting the deceased to the town of Fayette (he was not then dead), he was rushed away to a hospital in Jasper. The defendant was under no legal duty to go to Fayette to see about the deceased. If he had sufficient control of his reason, he did not know how he would be received and treated by the family of the deceased. If he had gone to Fayette to see about the deceased, he could not have proven it on the trial because it would have been a self-serving act. Allowing proof of the fact that he did not go was intended, and doubtless from verdict, had the effect of stirring up the jurors and engendering prejudice and feeling against him to the point of leaving them to believe from his apparent indifference that the shooting of the deceased was an intentional act by the defendant."

This question is definitely decided in the case of Lawler v. State, supra. See, also, Brown v. State, ante, p. 463, 116 So. 812.

■ Before entering upon the trial of this case defendant made motion to quash the venire, and in this connection the following facts were agreed upon, in open court, as being true:

"Comes the defendant and moves the court to quash the venire served on him for the trial of this cause, and assigns the following grounds:

"On the 2d day of September, 1927, the defendant was arraigned for trial in this cause, and the trial of this cause was set for Friday, September 9, 1927. It was ordered by the court that the jury venire for the defendant's trial be composed of the names of 95 jurors, to consist of the names of 70 jurors whose names were heretofore drawn as jurors for the week of the court beginning Monday, September 5, 1927, together with the names of 25 other jurors to be drawn as special jurors for the defendant's trial, and the court then proceeded to draw from the jury box the names of 25 jurors to be summoned as special jurors for the defendant's trial.

"On Monday of this week, to wit, September 5, 1927, the trial judge organized the court and drew 18 names from the regular jury drawn as jurors for this week of the court and organized them into a grand jury. The said 18 jurors so organized into a grand jury were a part of the venire of 95 jurors served on the defendant for the trial of this cause.

"The said 18 grand jurors who were a part of the venire served on the defendant for the trial of this cause have served all this week as members of the said grand jury. The said grand jury was on yesterday, to wit, September 8, 1927, discharged as a grand jury and as members of the grand jury for this session of the court, but were not discharged for the entire term of the court, and the said members of the grand jury are now in attendance in this court as petit jurors for the trial of this case and are on the venire from which the jury for the trial of this case is to be selected.

"Excluding the said 18 grand jurors, there are only left 77 jurors on the venire served on this defendant.

[1] Ante, p. 329.

"Wherefore the defendant moves that the venire served on him for the trial of this cause be quashed."

These facts disclose an unusual status, but we do not conclude that the substantial rights of the defendant were impaired to an extent necessitating a reversal of the judgment of conviction on this point. The gist of appellant's insistence is: That the eighteen men who served upon the grand jury, and who were also on the venire to try this case, were by such service rendered incompetent for that as grand jurors they occupied the position as quasi prosecutors generally, and while engaged in their work as such grand jurors they became inoculated with that virus. That they were cultivated into a hostile frame of mind against those charged with a violation of law. That they were in the discharge of duties which were inconsistent contemporaneously with the discharge of duty as petit jurors, etc. It is not contended that the number on the venire was reduced below that ordered by the court. And it affirmatively appears that none of said eighteen veniremen served upon the grand jury which returned the indictment in this case. This indictment was returned against appellant at a former term of court. We cannot accord to the insistences of appellant above quoted, and, as no such condition will probably arise upon another trial of this case, further discussion of the question is not necessary here.

The court's oral charge was fair, full, and complete. It ably stated the issues involved upon the trial and in our opinion this charge, together with those "given" at the request of defendant, fairly and substantially covered such of the refused charges as properly stated the law.

For the error designated, the judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.