# May *v.* The State.

## *Murder.*

(Decided May 12, 1910.    52 South. 602.)

1. *Homicide; Evidence; Threats.*—Statements made by a decedent at various times remote from the killing, that the defendant was a coward, and the use by the decedent of profane words in referring to the defendant, were not admissible as threats since they had no tendency to illustrate decedent's conduct at the time of the killing.

2. *Same; Lying in Wait.*—The presence of the decedent and others at the home of the defendant did not involve a threat by lying in wait.

3. *Same; Certainty.*—If evidence of threats was admissible in this case in explanation of the possession of a pistol by defendant immediately before the killing, which was used by the decedent as shown by the state's evidence, yet the occasion on which the threats were made should have been specified in order to permit the state to rebut evidence thereof, and hence, where defendant was asked whether at the time he had a pistol and if prior thereto threats had been made against his life, an answer that it had been reported to him that his life had been threatened was too general and properly excluded.

4. *Same; Other Difficulties.*—Where the defendant testified that decedent and others came to his house for the purpose of procur-

[May v. The State.]

ing his attendance at a civil trial and that he then heard decedent threaten him, questions to the defendant as to how long they had remained at his house were properly excluded as involving a previous difficulty, as were other questions propounded to the defendant involving the previous difficulty.

5. *Same; Self Defense; Instructions.*—A charge asserting that the law is a reasonable master and if at the time of the killing the appearances of danger surrounding the defendant were such as to produce a reasonable belief in his mind that his life was in danger or that he was about to suffer some great bodily harm, the jury should acquit the defendant if he was himself without fault, ignored the duty to retreat, and was properly refused.

6. *Appeal and Error; Review; Excluding Evidence.*—Where the record does not show the ground upon which the trial court acted in excluding testimony, any tenable ground will justify the court's action.

7. *Same; Harmless Error; Admission of Evidence.*—Where sufficient evidence was admitted to enable the jury to form correct conclusions as to whether certain persons in a wagon were drunk or drinking, and the defendant was permitted to testify without objection that in his judgment the man was drunk or drinking, it was harmless error to exclude a question to him as to whether the voices of those in the wagon which he heard appeared or sounded to him like the voice of a drunk or drinking man.

8. *Evidence; Opinion Evidence; Conclusion.*—One may testify that another is drunk or drinking.

9. *Same.*—Whether the voices which witness heard appeared or sounded to him as coming from drunken men did not in strictness require witness' opinion as to whether such persons were drunk, and hence, such a question was not objectionable as calling for a conclusion even if an answer thereto that they were drunk would have been objectionable as such.

10. *Same; Hearsay.*—A witness not being able to answer from his own knowledge as to the purposes for which he was summoned, it was not competent to ask him why the state had subpoenaed him.

11. *Charge of Court; Weight of Evidence.*—A charge asserting that if on account of the unsatisfactory character of the evidence or for any other reason the jury were not satisfied of the defendant's guilt to a moral certainty, they should acquit, suggested that the evidence of guilt was of an unsatisfactory character, and was properly refused.

12. *Same; Undue Prominence to Particular Facts.*—A charge asserting that it is the jury's duty to consider the witness' manner on the stand as well as at the time of the killing, the varying statements, if any were made by them, as well as their condition as to their sobriety, in order to give proper weight to their testimony, unduly emphasized specific features of the evidence and was properly refused.

APPEAL from Lauderdale Circuit Court.

Heard before Hon. C. P. ALMON.

John J. May was convicted of homicide, and he appeals. Affirmed.

The matters of evidence objected to sufficiently appear in the opinion. The following charges were refused to the defendant: (11) "The law is a reasonable master, and if the evidence shows you that at the time of the killing the appearances of danger surrounding the defendant were such as to produce a reasonable belief in the mind of the defendant that his life was in danger, or that he was about to suffer great bodily harm, and that the defendant was without fault in bringing on the difficulty, then you should acquit the defendant." (14) "If, on account of the unsatisfactory character of the evidence, or for any other reason, you are not satisfied that the defendant, is guilty to a moral certainty, you should acquit him." (15) "It is your duty, gentlemen of the jury, to consider the manner of the witnesses on the stand, as well as their manner and conduct at the time of the shooting, the varying statements, if any have been made by the witnesses, and also the condition of witnesses as to sobriety or drunkenness, in order to enable you to give proper weight to the testimony.".

A. H. CARMICHAEL and GEORGE P. JONES, for appellant. The defendant should have been allowed to show by his own testimony that he had been threatened as an excuse for carrying the pistol with which he killed deceased.—21 Cyc. 898; 6 Enc. of Evi. 707. The defendant should have been allowed to state the conduct of the decedent and the state witnesses with him, and that they appeared to be drunk.—7 Enc. of Evi. 777; *State v. Cather*, 96 N. W. 722. The evidence as to the presence of decedent and others at defendant's house should have been admitted.—*Linehan's Case*, 113 Ala.

83; *Gunter's Case,* 111 Ala. 23. Counsel discuss other assignments of error relative to evidence, but without citation of authority.

ALEXANDER M. GARBER, Attorney General, for the State. Evidence as to the arrest of Gray was immaterial.—*Kemp v. The State,* 89 Ala. 52. Counsel discusses other assignments of error relative to the evidence, but without further citation of authority. Counsel also discuss the charges refused and cites *Hussey v. The State,* 86 Ala. 34, as to charge 15.

SAYRE, J.—The homicide for which defendant was on trial occurred in the presence of a number of witnesses. There was evidence on behalf of the defendant which tended to show a case of self-defense. The trial judge admitted evidence of threats said to have been made by the deceased against the defendant on various occasions. A number of exceptions were reserved to those rulings of the court which denied defendant's offers to show circumstances not a part of the res gastæ nor amounting to threats, but in our judgment they hardly call for extensive treatment. Statements said to have been made by the deceased about the defendant at odd times, remote from the killing, to the effect that defendant was a coward and would not fight, and the fact that deceased used bad language and cursed when referring to defendant, did not amount to threats, had no tendency to illustrate the conduct of the deceased at the time of the homicide, and were excluded without error.

Defendant had testified to several difficulties with the deceased, and to threats made against him by deceased of which he had been informed. It appeared that some time before the fatal encounter there had been a trial of a civil cause before a justice of the peace.

Defendant testified that he knew nothing of the facts of that case, and had not attended the trial. He further testified that one Mr. Wilkes had told him that deceased had said that there were nine of them at the trial, and, if defendant had been there, they would have fixed him. Defendant sought by a series of questions to be permitted to testify that deceased had summoned him to attend that trial, or that deceased had come to his house with a number of others, and represented to him that his presence at the trial was desired, or that deceased had come to his house late at night to get him to attend the trial, or that just before the trial deceased came to his house and knocked on the door, and that when thereupon he had left his house and gone down into a corner of the fence near the road, he had heard deceased say what they would do if he had been there. After the state's objections to these questions had been sustained, the defendant testified without objection in these words: "On the night last referred to, when said parties knocked at my door, it was pretty late—I think about 11 o'clock. I was awakened by the knock. I left the house, went down through the garden, and up through the orchard. I saw five men pass by. I could not tell who any of them were except Grover Patterson. I knew him. I heard him talking about me not being at home, and they said they did not think I was there, and if I was, Patterson said, I was hard to wake. I heard Patterson say in that conversation: 'I am sorry he is not there. If he was we would fix his clock.'" Defendant's counsel then asked this question: "How long did Patterson and those other persons remain around your place?" Objection to this question was sustained. Exceptions were reserved to the several rulings indicated. It is clear enough that the act of deceased in summoning defendant as a wit-

ness or the mere effort to induce his attendance on the trial, which the defendant sought to show by the first several of the questions, did not in itself constitute a threat. It is said, however, that the attempt to get defendant to a place where it had been planned to fix —to kill—him, would have given meaning to the threat testified to by Wilkes. But the alleged threat was no threat. It was nothing more than a statement by the deceased of what he would have done in an event which had not happened. Nor was there evidence that the deceased had planned to kill defendant at the trial. It requires conjecture on conjecture to inject hostile meaning into the mere act of summoning or requesting the presence of defendant as a witness. The objection to the question as to the length of time Patterson and others remained around the defendant's place, we suppose, was sustained on the authority of *Harkness v. State,* 129 Ala. 71, 30 South. 73. The doctrine of that case was soon reaffirmed in *Willingham v. State,* 130 Ala. 35, 30 South. 429. We are not disposed to overrule those cases. The proposition that no consideration of convenience or inconvenience should have weight where life or liberty is at stake, is too comprehensive for practical purposes in the administration of justice. It is important, among other things, that cases, though involving life and liberty, be tried, and that the minds of the jury be not diverted from the merits of the case being tried by laying before them the details and merits of another.—*McAnally v. State,* 74 Ala. 9. Nor did the occasion in question present the features of a threat by laying in wait, as was the case in *Gunter v. State,* 111 Ala. 23, 20 South. 632, 56 Am. St. Rep. 17, nor such preparation for an attack as was shown in *Linehan v. State,* 113 Ala. 70, 21 South. 497. On due consideration we think the defendant had the

advantage of every fact to which he was entitled, and that there was no error here.

The same disposition must be made of those offers on the part of defendant to show that, on the occasion of several difficulties between him and deceased, the latter had charged defendant with interfering with an unlawful traffic in whisky, in which, on the hypothesis of the questions, deceased was engaged. These questions plainly called for the details of these previous difficulties.

There was evidence for the state tending to show that, immediately before the encounter in which Patterson lost his life, defendant had the pistol with which the killing was done concealed under the seat of his buggy. Defendant, as a witness, was asked by his counsel to state whether at that time and prior thereto threats had been made against his life. The defendant answered: "It had been so reported to me—been communicated to me that my life had been threatened." Appellant contends that there was error in sustaining objection to this question and the motion to exclude the answer for the reason that the evidence tended to show that defendant had reason to apprehend an attack, and thus to break the force of the suggestion of preparation carried by the state's evidence in respect to having the pistol concealed. The record does not disclose the grounds upon which the court proceeded. Any tenable ground will justify the ruling. The court allowed every offer to prove specific threats. If it be conceded that, in view of the testimony offered by the state on this point, evidence of threats was admissible to explain defendant's having a pistol, evidence of these threats ought to have been given in such form as to afford the state an opportunity for rebuttal—the occasions should have been specified. What defendant expected to prove

might have been developed by proper questions. As it was, the question was a fishing question. The answer was too general.—*Prince v. State,* 100 Ala. 144, 14 South. 409, 46 Am. St. Rep. 28.

An objection was sustained to this question put to the defendant. 'Did the voices of those that you heard down the road (referred to the party of several in the wagon with the deceased) appear—sound to you as if coming from drunken men?" Immediately thereafter the defendant was allowed without objection to testify in this language: "I heard the hallowing before I saw the men, and it was my judgment that they were drinking." A witness may testify that a person is drunk or drinking.—Jones on Evidence, § 360, and note with citation of authorities. It is urged that there is a wide difference between drinking and drunkenness, and that there was error which was not cured. There are degrees of intoxication. And it may be conceded that "drunk," as used in the vernacular, signifies a deeper degree than "drinking," If so, it still does not appear that there was error, for in strictness the question put did not ask for defendant's judgment as to whether the party in the wagon were drunk, but only whether the sounds were such as would come from drunken men— an inadequate basis for a judgment of drunkenness. But, however this may be, the question as to the degree of indulgence by the party in the wagon was the subject of elaborate examination. Apart from the opinion thus sought to be developed, the jury were in possession of every fact essential to a correct conclusion, including defendant's judgment that the party was drinking. It is not to be conceived in reason that the opinion called for would have influenced the jury to a verdict in any respect different from that rendered. On the contrary, we are satisfied that no injury result-

ed to the defendant from its exclusion, and that there was no reversible error.

It seems evident that the witness Gresham could not have testified, as of his own knowledge, for what purpose the state had caused him to be subpœnaed as a witness, and that there was no error in refusing to permit him to make the effort.

Charge 11, refused to the defendant, ignored the duty of retreat.

Charge 14 assumed that the evidence of defendant's guilt was of an unsatisfactory character.

Charge 15 laid undue stress upon specified features of the evidence.

The general charge was manifestly erroneous.

After a consideration of the entire record we are of the opinion that no reversible error affected the defendant's trial and conviction, and, in consequence, that the judgment must be affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and McCLELLAN, JJ., concur.