176 So. 382

## GRAHAM v. STATE.

### 6 Div. 78.

Court of Appeals of Alabama.

May 11, 1937.

Rehearing Denied June 8, 1937.

James Esdale, Albert Boutwell, and Robert Giles, all of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and John J. Haynes, Asst. Atty. Gen., for the State.

RICE, Judge.

The evidence was abundant to warrant the jury in finding, as their verdict showed they did, that appellant, while intoxicated—just plain drunk—drove the automobile in which he was riding through a, perhaps the, principal thoroughfare of the town of Leeds, Ala., at a highly reckless rate of speed.

As deceased, one Gable—also riding in a car, and driving it—was in the act of starting up his car to cross a street right in said town, after waiting for a traffic light there located to "change," or just as Gable was getting across said street, appellant, going in the same direction as was Gable, drove the car in which he (appellant) was riding into the back end of Gable's car. The collision caused Gable's death. Both Gable's car and the car driven by appellant were on the right side of the thoroughfare upon which they were traveling.

Appellant was indicted for, tried for, and convicted of, the offense of manslaughter in the first degree. His punishment was fixed at imprisonment in the penitentiary for the term of ten years.

It clearly appears that he had no specific intention of killing anybody.

But it is definitely the law that if a jury finds beyond a reasonable doubt that one drives an automobile in such a manner as to evidence "a wanton and reckless disregard of human life at the time and place and under the circumstances," and that such driving proximately causes the death of a human being, the driver is guilty of manslaughter in the first degree. Reed v. State, 225 Ala. 219, 142 So. 442. It would even seem, though not here important, that he may be guilty, in the discretion of the jury, of murder. Reed v. State, 25 Ala. App. 18, 142 So. 441; Hyde v. State, 230 Ala. 243, 160 So. 237.

The fact that said driver was at the time voluntarily intoxicated, so far from being a defense (Cagle v. State, 211 Ala. 346, 100 So. 318), would, in our opinion, be evidence, sufficient in itself, to show in said driver "a wanton and reckless disregard of human life at the time and place and under the circumstances," regardless of the actual rate of speed at which, or the way and manner in which, said automobile was being operated at the time. Experience teaches, or perhaps we should say observation teaches, that a man when thoroughly intoxicated can sometimes perform weird feats of skill. But science, experience, and observation all teach that such a man has a "wanton and reckless disregard" of everything. He operates an automobile, if so, not only at his own peril, but at the peril of all who chance to be on the road way at the time.

No question was raised on the trial of this case, or appears on the record, which we deem worthy of discussion, other than the single one raised by the refusal by the trial court to give to the jury at appellant's request the general affirma-

tive charge to find in his favor as to the presently concerned offense of manslaughter in the first degree.

What we have said above, we believe, fully demonstrates our view that there was no error in this regard.

The judgment is affirmed.

Affirmed.

### On Rehearing.

#### PER CURIAM.

On this application for rehearing appellant is represented by other counsel than appeared on original submission. They have filed a brief evincing much ability and industry. But our opinion remains unchanged.

We frankly admit the harshness of the decision—as applied to this particular appellant. All the evidence shows that he, at the time of the fatal collision, was, together with a companion, out, not to deal death to those on the highway, but to "catch air" to "cool off a state of intoxication" brought on by willingly imbibing whisky or other intoxicating beverages.

We are yet persuaded that the evidence met the test to entitle it to be submitted to the jury on the issue of whether or not appellant was guilty of manslaughter in the first degree—regardless of the admitted voluntary intoxication of appellant at the time. But we did mean to set down, just as appellant's present, astute counsel infer, as dictum, perhaps, for the guidance of all future "drunks"—to so denominate those who voluntarily become intoxicated —who have a yen for driving automobiles, or other motor-driven vehicles, the declaration that it was our opinion that "driving motor vehicles while voluntarily intoxicated evinced, per se, a wanton and reckless disregard for human life." That thesis will be elaborated when the occasion arises. It is now merely stated for the benefit of those unfortunates who may desire, like appellant, to get all "liquored up," then take charge of the steering wheel of their own, or somebody else's, car, and set out to "catch air"; the policy of this State as set forth in its statutes, and otherwise, being, definitely, to "take drunken drivers of motor vehicles off the highways."

The application is overruled.