45 So.2d 44

## GILLS v. STATE.
### 6 Div. 664.

Court of Appeals of Alabama.
Jan. 10, 1950.

Rehearing Denied Jan. 31, 1950.

Gibson & Hewitt, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

CARR, Judge.

This appeal is here from a judgment of conviction in the lower court for the offense of manslaughter in the first degree.

The following facts appear in the record without substantial dispute.

The decedent's death was caused by an impact between a motorscooter, on which he was traveling, and an automobile. The collision occurred at night, on a straight portion of a paved highway, near a place where another public road intersected the highway on which the colliding vehicles were traveling. The location was between Bessemer and Birmingham in a section where there were a number of dwelling houses.

The officers arrived soon after the collision. They found the appellant's car completely off the shoulder of the highway to the left in the direction it was traveling, headed against a tree. The pictures of the automobile disclose considerable damage to the immediate front of appellant's car. There were skid marks and indentations on the surface of the pavement. They extended back from the car to a distance of 204 feet. The mangled, dead body of the deceased and damaged parts of his motorscooter were found beneath the front portion of the defendant's automobile. The appellant was out of his car and standing near by.

The officers testified that they found the defendant in an intoxicated condition. The accused denied this. However, he stated that he had consumed two bottles of beer several hours prior to the collision.

According to the testimony of one of the investigating officers, on the journey from the scene to the jail, the appellant stated

that "he was passing a car, they were both going the same way—the car that he passed; and overtaken a scooter,—a motorscooter."

The investigator out of the solicitor's office took a statement from the accused. This was reduced to writing and signed by the latter. The statement in pertinent parts is:

"Last night I drove to B'ham, and got Willie D. Caster and her two children and brought them to Leroy Moorer's house at Travelick. We left the children at Leroy's house, and Leroy and Willie D. and I started to the 'Blue Frog' at Brown's Station. Willie D. and Leroy drank some home brew at Leroy's house but I did not drink any.

"In my best judgment it was about 9:30 o'clock last night when the three of us left Leroy Moorer's house and I was driving and Willie D. was sitting in the middle of the front seat and Leroy was sitting on the right of the front seat.

"We stopped one time before we got to the paved road and Leroy and Willie D. drank a can of beer each, but I did not drink anything. I drank one bottle of beer yesterday afternoon after I got off from work and that is all I drank at any time last night or yesterday.

"I drove to the paved big highway between Powderly, Ala., and Bessemer, Ala., and drove down the highway toward Bessemer. My car is a Model 1937 4 door Buick sedan.

"When I got to Hillman on the highway between Powderly and Bessemer I was meeting a car with bright lights and I was driving about 40 miles per hour, and just as this car took the lights off me and was passing me I hit a white man on a motor bike. I was driving about 40 miles per hour and this man was on the right side of the road in front of me and going in the same direction that I was, and I was on the right side of the road. I did not see this man on the motor bike until I hit him because the car that I was meeting had just taken its lights off of me.

"I put on my brakes and pulled to the left to try to pull away from the man that I had hit. I went across the left side of the road and went about 100 feet after I hit the man before I stopped against a tree and in some hedge in front of a house.

"I did not hear my brakes or tires making any noise before I stopped.

"The first noise or crash I heard last night when I had the accident was when I hit this man on the motor bike.

"When I stopped my car the three of us got out of my car and walked back up the big highway to see if we could see the man and the motor bike, and I did not see them, and we walked back to my car, and in the yard and the motor bike was partly under my car near the steering wheel and left bumper.

"When the accident happened Leroy Moorer was about half drunk and Willie D. Caster was under influence of intoxicants but not quite as drunk as Leroy."

In his testimony at the trial below the appellant stated that he gave the rate of his speed at 25 or 30 miles per hour and not 40 miles as it appears in the written statement.

He testified, also, that he told the officer "as the car was passing, we were passing each other, that I had hit something but I didn't know what it was."

The appellant's contention that he was meeting another car was supported by the testimony of other witnesses. From this evidence the jury could have reasonably inferred that the unidentified automobile first struck the deceased.

The evidence in its entirety does not present a conclusive factual situation in this aspect. In its most favorable light for the accused the impacts of the two cars against the motorscooter were practically simultaneous and occurred at the time the two automobiles were in the act of passing each other.

In fairness to a full review, we have attempted to set out the tendencies of the evidence in some detail.

Appellant's attorney in brief and oral argument cogently urges that the accused was due the general affirmative charge. This insistence is directed primarily to the position that a jury question was not pre-

sented on the charge of manslaughter in the first degree.

In approaching this review we are required to take the evidence favorable to the prosecution as true and accord to the State all legitimate inferences therefrom. Jones v. State, 33 Ala.App. 451, 34 So.2d 483.

"Manslaughter, by voluntarily depriving a human being of life, is manslaughter in the first degree; and manslaughter committed under any other circumstances is manslaughter in the second degree." Title 14, Sec. 320, Code 1940.

"In order to constitute manslaughter in the first degree, there must be either a positive intention to kill, or an act of violence from which, ordinarily, in the usual course of events, death or great bodily injury may be a consequence." Harrington v. State, 83 Ala. 9, 3 So. 425, 428.

"If the defendant in this case so recklessly drove an automobile along the public highway and in such manner as to endanger human life, and death resulted, the act would be manslaughter in the first degree whether the positive intention to kill was proven or not." Reynolds v. State, 24 Ala.App. 249, 134 So. 815, 816.

Appellant's counsel cites Rainey v. State, 31 Ala.App. 271, 17 So.2d 683. This court held in effect that wanton injury must be predicated upon actual knowledge of another's peril. On certiorari, 245 Ala. 458, 17 So.2d 687, 689, Justice Foster, writing for the Supreme Court, made this correction: "We note that in the opinion of the Court of Appeals reference is made to the fact that in wantonness the accused must have actual knowledge that another occupies a position of peril. True, it is sometimes so stated as in the cases they cite, where other aspects of wantonness were not involved. Copeland v. Central of Georgia Ry. Co., 213 Ala. 620, 105 So. 809, and in Pratt v. State, 27 Ala.App. 301, 171 So. 393. But it is also as well settled that it is culpable wantonness when the accused has knowledge that some person (any person) is likely to be in a position of danger and with conscious disregard of such known danger, he recklessly proceeds on a dangerous course which causes the disaster, though he may not know whether any person is actually in danger. Godfrey v. Vinson, 215 Ala. 166(6), 110 So. 13; 15 Alabama Digest, Negligence, ⊂⊃11, page 301."

It is to be noted, also that the Supreme Court held that the defendant was not due the general affirmative charge.

We are clear to the conclusion that the evidence in the instant case presented a jury question as to the offense of manslaughter in the first degree. The affirmative charge was, therefore, properly denied. Jones v. State, supra; Reynolds v. State, supra; Hammell v. State, 21 Ala.App. 633, 111 So. 191; Graham v. State, 27 Ala.App. 505, 176 So. 382; Rainey v. State, 245 Ala. 458, 17 So.2d 687; Williams v. State, 17 Ala.App. 285, 84 So. 424.

The evidence which we have hereinabove delineated will serve to illustrate our view that we are not authorized under the familiar rule to declare that the trial judge was in error in denying the motion for a new trial. Jones v. State, supra; Booth v. State, 247 Ala. 600, 25 So.2d 427; Freeman v. State, 30 Ala.App. 99, 1 So.2d 917.

The deceased was killed as he was going from his home to the place of his employment. His customary route of travel was proved by his son. This related to an undisputed fact. The accused was in no manner injured by this proof. Rules of Practice in Supreme Court, Rule 45, Code 1940, Tit. 7 Appendix.

As we have stated above, the officers came to the scene soon after the collision and before the automobile was moved or the dead body of the deceased was released from beneath it. They were allowed to describe the signs and marks which they observed on the pavement, with particular reference to the skids and scratches on the surface of the highway. The introduction of this evidence did not constitute error. McWhorter Transfer Co. v. Peek, 232 Ala. 143, 167 So. 291; McPherson v. Martin, 234 Ala. 244, 174 So. 791.

■ Proof by the officers that the accused appeared to be drunk when the witnesses reached the scene related to a material inquiry. It referred to observations that were made a short time after the collision. Clearly, there was not sufficient intervention of time from the main event to affect its admissibility.

■ The introduction of the evidence was not in violation of the rule against permitting a witness to testify to a conclusion. Dozier v. State, 130 Ala. 57, 30 So. 396; May v. State, 167 Ala. 36, 52 So. 602; Hargrove v. State, 22 Ala.App. 67, 111 So. 587; Ballard v. State, 25 Ala.App. 457, 148 So. 752; Pierson v. State, 31 Ala.App. 452, 18 So.2d 578.

■ Objections were interposed to the confession of the appellant on the special grounds that the corpus delicti had not been proved and that the statement was not shown to be voluntary.

Clearly, the corpus delicti had been established by the evidence. The introduction of the confession was allowed after proof that the broken, dead body of the deceased was found beneath the automobile. Vernon v. State, 239 Ala. 593, 196 So. 96; Johnson v. State, 247 Ala. 271, 24 So.2d 17; Roberts v. State, 25 Ala.App. 477, 149 So. 356; Carr v. State, 17 Ala.App. 539, 85 So. 852.

■ The rule was in every respect observed by the requisite proof that the statement was voluntarily made. The fact that the accused was in jail at the time the confession was made did not, of itself, render the same involuntary. Sampson v. State, 54 Ala. 241; Logan v. State, 251 Ala. 441, 37 So.2d 753; Brooks v. State, 248 Ala. 628, 29 So.2d 4; Dyer v. State, 241 Ala. 679, 4 So.2d 311.

■ On cross examination of Willie D. Castor, one of the occupants of the defendant's car, the solicitor asked this question: "Do you remember up there at the scene of this accident you offered to fight up there and used some cussing around there before you left?"

After objections there was no answer. Kelley v. State, 32 Ala.App. 408, 26 So 2d 633; Malone v. State, 16 Ala.App. 185, 76 So. 469.

■ Two of appellant's witnesses, who were on the scene promptly after the collision, were cross examined with reference to the conduct of Willie D. Castor, particularly whether or not she appeared to be drunk and was cursing. This person had previously testified in the case, and, of course, her sobriety vel non affected her mental ability to accurately recall the facts about which she deposed. Vintson v. State, 23 Ala.App. 51, 121 So. 698; Sandlin v. State, 25 Ala.App. 311, 146 So. 82; Clayton v. State, 23 Ala.App. 150, 123 So. 250.

The jury was privileged to know her conduct and demeanor and from them determine whether or not she was, in fact, intoxicated.

■ All this aside, each of the questions relating to the inquiry was answered in the negative and no harm to the accused followed. Edmonds v. State, 16 Ala.App. 157, 75 So. 873; Stephens v. State, 250 Ala. 123, 33 So.2d 245; Supreme Court Rule 45.

■ We do not agree with counsel in his insistence that the solicitor went beyond his right of free cross examination by his repeated efforts to elicit this information.

■ One of the defendant's witnesses was cross examined with reference to her prior statements before the grand jury. In brief counsel complains: "It is not shown that the witness had an opportunity to examine the testimony before being cross examined. The court refused to allow appellant's counsel to examine same before the solicitor finished with cross examination."

The record in this regard discloses that the court did give the witness an opportunity to read the statement and she replied: "You can read them if you want."

On redirect examination counsel was furnished the entire transcription of the witness' testimony taken before the grand jury, and he introduced it in evidence.

Clearly, this procedure did not in any manner affect the substantial rights of the accused.

■ The court overruled some objections to portions of the solicitor's argument to the jury. The judge indicated by his

rulings that it was a reply in kind to statements of appellant's counsel which had preceded. Under these circumstances, we are not authorized to charge error. Hines et al. v. Paden, 204 Ala. 592, 87 So. 88; Elmore v. State, 21 Ala.App. 410, 109 So. 114; Gilliland v. R. G. Dunn & Co., 136 Ala. 327, 34 So. 25; Hanners v. State, 147 Ala. 27, 41 So. 973; Roden v. State, 3 Ala. App. 193, 58 So. 74; Barney v. State, 5 Ala.App. 302, 57 So. 598.

■ In brief, appellant's counsel urges that it was error to refuse written instruction A. The conviction of the accused did not depend wholly on circumstantial evidence by any standard of evaluation or measurement.

■ The other refused charges need not be discussed. They either failed to state the law correctly or were substantially covered by the oral charge or given written instructions. Title 7, Sec. 273, Code 1940.

We have treated all questions which in our view are of meritorious significance.

The judgment of the court below is ordered affirmed.

Affirmed.

## On Rehearing

In brief on application for rehearing counsel states:

"Without waiving his application and motion for a rehearing on the grounds hereinabove argued, and upon all grounds raised in appellant's original brief and oral argument, appellant respectfully requests the court, in the event this application for a rehearing is overruled, to extend the opinion by adding the following which, in the opinion of appellant's counsel, will present the picture more clearly to the Supreme Court:

"The accident occurred at a place not within the limits of any municipality.

"The photographs offered in evidence by the State showed that the motorscooter was painted a dark color, either black or dark blue.

"The defendant's witness Will Bonham testified, among other things, as follows:

"I asked the defendant what happened and he said, 'I don't know. I hit something or the other car hit me one or the other. Something hit.' He was walking back looking to see what he hit. The defendant's car was a different car from the one I had seen go toward Birmingham.

"Defendant's witness, Willie D. Caster, testified, among other things, as follows:

"When I first heard the noise the car that was passing us was right in front, just passing. The car going toward Birmingham was going fast. I believe it had bright lights. I didn't see any other lights. I was looking ahead. I didn't see the gentleman on the motorscooter there in the road.

"Defendant's witness, Nina Mason, among other things, testified as follows:

"I noticed a car coming from behind me with such high speed, going up to Birmingham. I got off the road to keep the car from passing me on the bridge, it was coming so fast. When I got back on the road a piece and there was a little rise in the road, and I saw one dim light. Just behind this dim light was two bright lights, and the dim light was flickering like that (indicating) and I thought there was another automobile with one light. By that time this car that passed me struck this one light that I saw, and I saw it flame up or blow up or something. I couldn't say what happened. I just heard the noise. The one dim light and the two lights that were facing me were facing toward Bessemer, and I was going up toward Birmingham. The car that passed me was going toward Birmingham and was the one that hit this one light. The one light was in front of the two bright lights.

"When this car passed me, it struck the dim light and just in a mere second it all went up in smoke. I couldn't tell how far this other car was behind the dim light. The first car struck the dim light. The dim light that was flickering was almost in the center of the road. The car going from Bessemer toward Birmingham was more to the center of the road. At the time I saw the car that was going toward Birmingham hit this flickering light, the car that was coming toward Bessemer was just a few feet behind the dim light. I heard two crashes. I saw this first car hit the dim

126

light, then I heard it. A mere second or something and it went up, and I heard the crash. From the time I heard the car going toward Birmingham hit it, and saw the blaze and flash, until I heard the second lick, it was about two minutes, I guess, or a minute and a half, and then I heard the other crash and the scraping.

"The one coming to Bessemer was over on its right lane of travel, which would have been on my left, and the one going to Birmingham was more in the center line. The motorscooter was not exactly in the center but it was on the left of the center line.

"Defendant's witness, Elizabeth Davis, testified, among other things, as follows:

"Mr. Fox was out there on the motorcycle or motorbike. Something must have been wrong with it because he was trying to get it started. He was right in front of my door. He was on his side of the road but mostly about the yellow line, close to the yellow line, about six inches from the yellow line. I didn't see no light on the motorscooter. I was on the side of it and I couldn't see the light. About that time the car coming from Bessemer hit him and knocked him from in front of my house up a little closer by the yellow line, and at that time another car hit him; two licks together, and then a cloud of smoke. The car that hit him the second time was the one coming from Birmingham, but the first lick was hit by the car coming from Bessemer. I was looking right at it.

"There were two licks. The two cars did not hit. The car coming from Bessemer hit him. I saw it. I heard him holler three times. He was standing in the road with a car behind him. He saw the car coming in front of him and he hollered three times. That was the car that hit him. He was knocked up in the road and that was where this other car hit him coming down the road.

"The appellant, Nathaniel Gills, testified, among other things, as follows:

"I did not see Mr. Fox or anyone else on a motorscooter or anything in front of me before the wreck. The only light I saw

facing me were the two bright lights on the car I passed."

We have no hesitancy in extending our original opinion so that it will include the above additional tendencies of the evidence.

Our further consideration of the record in the case does not convince us that we should depart from our original view.

The application for rehearing is therefore overruled.