54 So.2d 719

**CLAYTON v. STATE.**

7 Div. 120.

Court of Appeals of Alabama.

June 29, 1951.

Rehearing Denied Aug. 2, 1951.

See also, 35 Ala.App. 93, 44 So.2d 276.

Beddow & Jones and Robt. W. Gwin, all of Birmingham, and Hugh Reed, Jr., Centre, for appellant.

Si Garrett, Atty. Gen., and Thos. M. Galloway, Asst. Atty. Gen., for the State.

CARR, Presiding Judge.

In the lower court the accused was indicted for murder in the first degree and convicted of the lesser offense of manslaughter in the first degree.

The indictment alleges that he killed William Thomas Compton, alias B. T. Compton, by shooting him with a gun or pistol.

In many aspects the evidence is not in substantial dispute.

On the day in question the appellant came to Centre, Alabama at about nine o'clock A.M. He was a resident of the county and lived a short distance from Centre.

Soon after his arrival he attended to some business matters. The evidence supports the view that before very long he became noticeably under the influence of intoxicants.

At about noon the appellant accosted Mr. W. A. Garner on the streets of the city. Apparently the two men were strangers, and there is no evidential indication of any reason or motive for appellant's abusive and insulting approach to Mr. Garner. The latter resented the insults, and a scuffle or fight ensued. The two participants were separated.

The appellant left immediately and went to a nearby garage. He returned forthwith with a pistol. When he reached at or near the place of the indicated difficulty he fired two pistol shots into the ground. At this time Mr. Garner had walked away and was at a distance of 40 or 50 steps.

P. L. Snead and Mr. Compton were standing near each other in front of a store building at a point about 25 or 30 feet from the appellant. When the two shots were fired, both of these men went immediately inside the door of the building. Mr. Snead remained only a short time and returned to about his former position in front. Mr. Compton proceeded toward the rear or side of the inside of the store. According to Mr. Snead's testimony he did not appear to be injured or hurt.

When Mr. Snead returned to the front he saw the appellant fire two more pistol shots. At this time the latter had moved some from the position of the first firing, only a short distance however.

The evidence indicates that the bullet from one of the last two firing incidents entered the side wall of the indicated store building at a point about seven and one-half feet above the level of the ground beneath, and passed through a shed room.

The circumstances and physical facts lead to the conclusion that Mr. Compton was standing in or near the shed room on some articles which elevated his body. The bullet struck and passed through his head and found final lodgment in the wall or part of the structure.

No one was near the deceased when he was injured, and it was some time later before the dead body was located in the building.

The other shot from the last firing was directed toward the sidewalk.

There is evidence which tends, in some aspects and particulars, to establish a different state of facts from those we have delineated. However, it can be accurately stated that the weight of the oral testimony and the convincing physical disclosures tend strongly to the conclusion that the deceased came to his untimely death in the manner we have described.

The defendant testified in his own behalf and related the circumstances of his arrival in Centre and the attention to his business affairs. He stated that he did not drink any whiskey before arriving in town, but soon began to drink and before a great while became intoxicated.

He testified that during the forenoon he became so drunk that he experienced a mental blackout. With reference to this he stated:

"A   The last thing I remember I went down to the foot of the hill in East Centre and I stopped down there and I saw a

friend of mine out there and I told him to go in there and get me a wiener, and he did and brought it back out there, and I came on back to town and when I got back there is the last thing I remember.

"Q Do you know where you were when you last recall anything that occurred? A I just faintly remember driving the car in that place in there. I don't remember getting out of the car or anything.

"Q You don't remember that? A No.

"Q Where were you when you next remember anything or when you were able to understand those things that were occurring about you; where were you? A I was down there in jail."

Without dispute in the evidence he was on the streets of the city, in places of business and talking to different persons, after he returned from the wiener stand and before the difficulty with Mr. Garner. Those who saw him and testified stated that he appeared to be intoxicated.

There is no proof that the accused had any motive or specific intent to kill Mr. Compton. In fact, the contrary is made to appear. The two persons had been acquainted for ten or twelve years and no occasion had arisen for ill will or hatred during this rather long acquaintanceship.

The entire brief of appellant's attorneys is devoted to the insistence that the evidence is not sufficient to sustain a judgment of conviction for manslaughter in the first degree. They do not press the position that the defendant was due the general affirmative charge, but they urge that the great weight of the evidence is contrary to the verdict, and on this account we should base error on the refusal of the lower court to grant the motion for a new trial.

■ The authorities are expressly committed to the view that voluntary drunkenness is not a defense to manslaughter in either degree. This, because the offenses do not involve a specific intent. Laws v. State, 144 Ala. 118, 42 So. 40; Coats v. State, 253 Ala. 290, 45 So.2d 35; Tate v. State, 26 Ala.App. 411, 161 So. 456.

"Manslaughter, by voluntarily depriving a human being of life, is manslaughter in the first degree; and manslaughter committed under any other circumstances is manslaughter in the second degree." Title 14, Sec. 320, Code 1940.

■ "In order to constitute manslaughter in the first degree, there must be either a positive intention to kill, or an act of violence from which, ordinarily, in the usual course of events, death or great bodily injury may be a consequence." Harrington v. State, 83 Ala. 9, 3 So. 425, 428.

■ It is not required that actual intent to kill should be present to constitute manslaughter in the first degree. The courts apply the age-old doctrine that a person intends the natural and probable consequences of his acts. Lewis v. State, 96 Ala. 6, 11 So. 259; Fowler v. State, 161 Ala. 1, 49 So. 788; Jones v. State, 13 Ala. App. 10, 68 So. 690.

The appellate courts in many cases have sustained a conviction for manslaughter in the first degree where the death was due to an automobile collision and where culpable wantonness was established by the evidence.

In the case of Rainey v. State, 31 Ala. App. 271, 17 So.2d 683, this court held in effect that wanton injury must be predicated upon actual knowledge of another's peril. On certiorari, 245 Ala. 458, 17 So.2d 687, 689, Justice Foster, writing for the Supreme Court, made this correction: "We note that in the opinion of the Court of Appeals reference is made to the fact that in wantonness the accused must have actual knowledge that another occupies a position of peril. True, it is sometimes so stated as in the cases they cite, where other aspects of wantonness were not involved. Copeland v. Central of Georgia Ry. Co., 213 Ala. 620, 105 So. 809, and in Pratt v. State, 27 Ala.App. 301, 171 So. 393. But it is also as well settled that it is culpable wantonness when the accused has knowledge that some person (any person) is likely to be in a position of danger and with conscious disregard of such known danger, he recklessly proceeds on a dangerous course which causes the disaster, though he may not know whether any person is actually in danger. Godfrey v. Vinson, 215 Ala. 166(6), 110 So. 13; 15 Ala.Dig. Negligence, p. 301, ⊜11."

See also Duncan v. State, 30 Ala.App. 356, 6 So.2d 450; Jones v. State, 33 Ala. App. 451, 34 So.2d 483; Reynolds v. State, 24 Ala.App. 249, 134 So. 815; Graham v. State, 27 Ala.App. 505, 176 So. 382; Johnson v. State, 34 Ala.App. 623, 43 So.2d 424; Hammell v. State, 21 Ala.App. 633, 111 So. 191; Williams v. State, 17 Ala.App. 285, 84 So. 424.

As counsel points out in brief the case of Bagwell v. State, 22 Ala.App. 567, 117 So. 906, contains facts in some aspects analogous to those in the case at bar.

The case was reviewed by this court on two different appeals (23 Ala.App. 348, 128 So. 359).

In the opinion on the first appeal Presiding Judge Bricken observed: "It occurs to us from all the evidence in this case (in the event of a conviction) that an intelligent verdict thereunder would have been for manslaughter in the second degree." ·

However, the reversal of the judgment blow was not predicated on this view. On retrial the defendant was again convicted of manslaughter in the first degree. On appeal we sustained the conviction.

It is pointed out in the opinion that no motion for a new trial was filed, but the court did not commit itself to a definite view of the matter and declare its decision if the motion had been up for review.

In the last analysis our review in the case at bar must be related primarily to the application of the rule stated in Heninburg v. State, 151 Ala. 26, 43 So. 959, 960:

"If, however, there is a wanting of intention or willfulness in the doing of the unlawful act causing the death, resulting from a mental status incapable of forming an intent or purpose to do the act, although produced by drunkenness, there is then an absence of an essential element of manslaughter in the first degree. And in such case, the homicide, being unlawful, but neither malicious nor intentional, would be manslaughter in the second degree under the statute."

As we indicated in the delineation of the evidence, the appellant was on the streets of Centre for some time after he returned from the wiener stand and before the firing of the pistol shots. Witnesses who gave an account of seeing and talking to him testified that he was intoxicated, but they also detailed facts upon which the jury could intelligently determine the extent of intoxication. Clearly it was in its province to do so.

The appellate courts are frequently required to review the question of instant concern. The high privilege of the reviewing courts to disturb the action of the trial judge in denying a motion for a new trial, based on the ground that the verdict is contrary to the evidence, should be exercised with due caution and great care.

It must be remembered that the verdict of the jury, followed by the judgment thereon of the judge presiding at the trial, should be given that weight and consideration that our judicial processes and procedures demand.

It is our considered conclusion that to disturb the verdict in the instant case we would place our holding out of harmony with the many authorities which have reviewed the question. Hyde v. State, 230 Ala. 243, 160 So. 237; Reynolds v. State, supra; Gills v. State, Ala.App., 45 So.2d 44;[1] Booth v. State, 247 Ala. 600, 25 So.2d 427; Freeman v. State, 30 Ala.App. 99, 1 So.2d 917; Jones v. State, supra.

There are a number of written charges which were refused to the defendant. Most of these relate to murder in the first or second degree. Those that do not come under this head are either argumentative, invasive of the province of the jury, or were substantially covered by the oral charge or written instructions given at the instance of the defendant.

The questions to which we have not responded relate to familiar rules of law. A discussion of them would not be helpful.

Clearly no prejudicial error appears in any ruling incident to these undiscussed matters.

It is ordered that the judgment below be affirmed.

Affirmed.