301 So.2d 226

**Foy Junior EDSON, alias**

**v.**

**STATE.**

**4 Div. 288.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1974.

William J. Baxley, Atty. Gen., Montgomery, and Jonathan P. Gardberg, Sp. Asst. Atty. Gen., Mobile, for the State.

James M. Prestwood, Andalusia, for appellant.

KENNETH F. INGRAM, Circuit Judge.[1]

This is an appeal from a judgment of conviction for the offense of manslaughter in the first degree. Punishment was fixed at two years in the penitentiary of Alabama.

The death of Frances W. Wiggins and Charles Mathew Wiggins was caused by a head-on collision between the automobile in which they were riding and a vehicle being driven by the defendant, Foy Junior Edson. The collision occurred at approximately 9:50 p. m. on County Road No. 7 in Covington County, Alabama, near the town of Red Level. The Wiggins' vehicle was traveling north, and the Edson vehicle was traveling south. The point of impact was established as being in the northbound lane of the road. It was a hard surface road.

1. July 3, 1974, pursuant to § 6.10 of the Judicial Article, Amendment No. 328 of the Constitution the Chief Justice assigned to this Court Honorable Kenneth F. Ingram, Judge of the 18th Judicial Circuit, for temporary service.

It had neither center stripes nor stripes marking the edges of the road.

State Trooper Conrad Fowler arrived at the scene approximately fifteen minutes after the collision occurred. He made an investigation of certain physical facts. He measured tracks made through the grass on the shoulder of the road from the rear wheels of the Edson vehicle back to the point where he concluded that it left the pavement. This distance was 460 feet. He observed a large cleared out spot where the grass had been scraped away as if a vehicle had "bottomed-out." This clear spot was along the tracks made by appellant's vehicle at a point approximately 154 feet from where the vehicle left the pavement. He found a large amount of grass and dirt under the front bumper, cross member and control arms of appellant's vehicle.

Appellant was still in his vehicle when Trooper Fowler arrived at the scene. Trooper Fowler went to appellant's vehicle to observe his condition. He noticed that appellant had a cut on his forehead, some teeth knocked out and his mouth was bleeding. He smelled a strong odor of alcoholic beverages on appellant. On the back seat of appellant's automobile was an empty sack and an empty Budweiser beer carton.

Appellant was taken from his automobile and placed on a stretcher and then into the rescue ambulance. Two deputy sheriffs, Jim Tucker and Glen Chambers, assisted in moving appellant. Both testified that they observed the odor of alcoholic beverages on appellant's breath.

At the local hospital, appellant was seen briefly by a physician who took several stitches in his facial and chest lacerations. He was not admitted to the hospital. He was heard to say at the hospital that he had rather go home. He could rest better there.

Later that night, at about 12:00 p. m., Trooper Fowler went to appellant's home to see his drivers license. He testified that the odor of alcoholic beverages was still strong on the appellant at that time.

Lester Myers, a local store operator, testified that he sold appellant a six-pack of 12 ounce Budweiser beer about 4:30 to 5:00 p. m. on the day of the accident. He further stated that appellant came back to his store that same day at approximately 6:30 p. m. for more beer. Myers testified that he observed that appellant was under the influence of alcohol. He refused to sell him any more beer. In refusing, Myers told him, "that he had enough and to go on home."

Forest Hobson, the county coroner, testified that Charles Mathew Wiggins died from a crushed chest and possibly a broken neck. Appellant then stipulated that Mrs. Wiggins died from injuries received as a result of the automobile accident.

No testimony was offered as to the date on which the accident occurred.

Appellant took the stand and testified that he had been cutting wood all day on the day of the accident, and that he did in fact purchase some beer early in the afternoon. He stated that the beer was purchased by him for his uncle who was helping him cut the wood. Appellant also stated that he drank only a portion of one beer at that time. Later in the evening, he went to his brother's house where he drank about half of a beer from another six-pack of beer which he had purchased at Castleberry's store.

The accident happened soon after he left his brother's house. He stated that he was traveling south on County Road No. 7 at approximately 45–50 miles per hour when he first saw the Wiggins' car. He described the car as being all over the road and that just before the collision it came over into his lane of the road. He also stated that at no time prior to the accident did his vehicle leave the pavement. He disclaimed any knowledge of the empty Budweiser carton found by Trooper Fow-

ler in his automobile at the scene of the accident.

The appellant offered several other witnesses, one of whom was Charles Johnson. Johnson said he saw the appellant late in the afternoon on the day of the accident, and that in his opinion, the appellant was not intoxicated. He also stated that he saw appellant later that night just before the accident happened and was driving behind him when he drove through the town of Red Level as he traveled south on County Road No. 7. Johnson said that during the time he was following appellant, he drove in a straight and regular manner at a speed of somewhere around 30–35 miles per hour. Johnson, however, did not continue following appellant and was not behind him at the time the collision occurred. He said that he had stopped just around the curve from where the accident happened. He remained stopped there for five or six minutes while appellant continued south. Johnson further testified that although he neither saw nor heard the collision, he did observe an unusual flash of light when the collision occurred. He then went on around the curve to the scene of the accident.

Johnson also testified that he worked in Hillary Castleberry's store all day the day of the accident and that appellant did not buy any beer there. Appellant had previously testified that he purchased a six-pack of beer at this store that day.

Appellant produced other witnesses whose testimony cumulatively. tended to show that he was not intoxicated at the time of the accident.

Appellant contends here that the evidence in the court below was not sufficient to sustain a conviction of manslaughter in the first degree. This was presented to the trial court by defendant's motion to exclude the State's evidence. The motion was overruled.

■ In writing to this question, we are required to take the evidence favorable to the prosecution as true and accord to the State all legitimate inferences therefrom. Jones v. State, 33 Ala.App. 451, 34 So.2d 483; Gills v. State, 35 Ala.App. 119, 45 So.2d 44.

■ We have carefully considered the evidence in this case and are of opinion that the evidence presented questions for the determination of the jury and was sufficient, if believed, to sustain the judgment of conviction for manslaughter in the first degree. There was no error in refusing to give the affirmative charge predicated on the weight of the evidence. Gills v. State, supra; Graham v. State, 27 Ala.App. 505, 176 So. 382.

Appellant insists that the jury's verdict should be overturned because it is wrong and unjust. We are not pursuaded that it is either. In Willcutt v. State, 284 Ala. 547, 226 So.2d 328, our Supreme Court said, "It is for the jury, not the trial court or this court, to find the facts and to determine guilt or innocence."

■ If inferences from the evidence are sufficiently substantial to support the finding of the jury, the verdict of the jury should not be disturbed. Haggler v. State, 49 Ala.App. 259, 270 So.2d 690.

■■ Appellant next argues that culpable wantonness was not proved by the State. We do not agree. Culpable wantonness exists when the accused has knowledge that some person (any person) is likely to be in a position of danger and with conscious disregard of such known danger, he recklessly proceeds on a dangerous course which causes the disaster, though he may not know whether any person is actually in danger. It is also well settled that if one drives an automobile in such a manner as to evidence a wanton and reckless disregard of human life at the time and place under the circumstances, and such driving proximately causes the death of another, the act would be manslaughter in the first degree whether the positive in-

tention to kill is proved or not. Gills v. State, supra; Reynolds v. State, 24 Ala. App. 249, 134 So. 815; Graham v. State, supra.

The next contention of appellant is that the State failed to show such a degree of intoxication of appellant as to warrant a finding of culpable wantonness. We do not agree. The State presented substantial evidence from which the jury could infer that appellant was driving in a wanton manner and under the influence of alcohol at the time of his collision with the Wiggins' vehicle. The appellant attempted to purchase beer some three or four hours before the collision but was refused service by the proprietor of the store because the appellant was intoxicated. Between this time and the time of the accident, appellant purchased beer at another store and drank one beer just a short time before the accident happened. Graham v. State, supra.

In his final contention, appellant urges us to reversal because of certain remarks made by the district attorney in his argument to the jury. The first of these was when he said, "He wanted to get away from the hospital before any test could be made on him." Appellant objected; the court overruled the objection and appellant excepted to the court's ruling. The other remark was when the district attorney said, "He knew it and he knew he couldn't pass the alcohol test." Appellant objected; the court overruled the objection. The appellant excepted to the court's ruling.

There is no legal standard by which the prejudicial qualities of improper remarks of a district attorney in the trial of a case can be gauged. Each case must be determined on its own merits. Smith v. State, 282 Ala. 268, 210 So.2d 826.

Counsel are allowed considerable latitude in drawing their deductions from the evidence in argument to the jury. Bryson v. State, 264 Ala. 111, 84 So.2o 785; Garrett v. State, 268 Ala. 299, 105

So.2d 541; Espey v. State, 270 Ala. 669, 120 So.2d 904.

It is both the duty and the right of counsel to present the case of his client, whether it be the state or a defendant, as fully and forcibly as the evidence, its tendencies and the inferences therefrom may justify. Within these limits, the widest range of discussions should be accorded. Childress v. State, 86 Ala. 77, 5 So. 775.

The rule in this state is well established and has been often cited. It is as follows: "The statement must be made *as of fact*; the fact stated must be unsupported by any evidence, must be pertinent to the issue, or its natural tendency must be to influence the finding of the jury . . ." This is the law as stated in Cross v. State, 68 Ala. 476. This rule was then elucidated for us in other language found in the Cross case when the court said, "Every fact the testimony tends to prove, every inference counsel may think arises out of the testimony, the credibility of the witnesses, as shown by their manner, the reasonableness of their story, their intelligence, means of knowledge, and many other considerations, are legitimate subjects of criticism and discussion. So, the conduct of the accused, his conversation (if in evidence), may be made the predicate of inferences, favorable or unfavorable."

The tendencies of the evidence in the instant case were that the appellant was under the influence of alcohol at the time of the accident, and that he continued to display an odor of alcoholic beverages on his breath or about his person soon after the accident while he was at the hospital waiting to have stitches in his facial and chest lacerations. He chose not to be admitted to the hospital, but rather, to go home.

We are clear to the conclusion that the remarks objected to are inferential rather than factual under our interpretation of the above stated rule. We therefore consider that neither remark was improper or prejudicial to the appellant.

No objection was raised to the trial court's oral charge.

We have considered the entire record under the provisions of Code of Alabama, Title 15, Section 389, and from our examination of the record, we conclude that error is not made to appear.

Affirmed.

All the Judges concur.