On August 28, 1973, on an indictment charging murder in the first degree, appellant was convicted of manslaughter in the first degree of Harold W. Culpepper and sentenced to imprisonment for ten years. Explanation for the interval of more than three years between the conviction and this opinion is to be found, partly at least, in the change of mind of defendant after he had notified the court that he did not desire an appeal, and proceedings subsequent to such change of mind. On a hearing on a petition for habeas corpus by appellant herein, the United States District Court for the Northern District of Alabama, Middle Division, found that he had changed his mind and his court appointed counsel had given the court timely notice by letter that he desired to appeal his conviction and the court "instructed court-appointed counsel to prepare an order appointing counsel for the appeal and to file an application for a free transcript," but for "unexplained reasons, these procedures were not followed." The United States Court granted the petition for habeas corpus subject to conditions in the alternative: (1) the State could retry petitioner, (2) the State, if it chose to do so, could grant petitioner an out-of-time appeal, or (3) the State could consider that defendant had given timely notice of an appeal. Thereafter, on motion of the State of Alabama through the Attorney General, the trial court entered an order declaring defendant indigent, directing the preparation *Page 1064 
of a transcript, without expense to appellant, and appointing his counsel on the trial as his counsel on appeal. Briefs have been filed, and the appeal was orally argued and submitted on the merits on October 4, 1976. We will proceed to a determination thereof on its merits.
Defendant pleaded not guilty and not guilty by reason of insanity. In advance of trial, a hearing was conducted on defendant's motion for "determination of defendant's mental competency." In the motion, defendant had requested that the defendant be made available for the "Dekalb County Mental Health Center to administer a test to determine the intelligence quotient of the defendant prior to the court's hearing the main motion herein." The request was granted and defendant was analyzed by a psychometrist at the DeKalb County Mental Health Clinic. On the hearing of the "main motion," the report of the psychometrist was offered in evidence, but the State objected to it on the ground that it was hearsay, and the court sustained the State's objection. The report showed an intelligence quotient of sixty-six, which placed defendant in the "mild mentally retarded category of intellectual functioning," which according to the report indicated that he functioned somewhat like a ten-eleven year old child. The motion expressly relied upon "Title 15, Chapter 21, Article 2, Code of Alabama." Section 426 thereof provides in part as follows:
 "If any person charged with any felony be held in confinement under indictment, and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity, such jury to be impaneled from the regular jurors in attendance for the week or from a special venire, as the court may direct . . ."
The quoted portion of the statute is the controlling provision as to this case.
In determining whether there is "reasonable ground to doubt his sanity," or to doubt a "defendant's mental competency" to stand trial, the trial court is not necessarily restricted by general principles of evidence. It has the right to consider, and should consider, any matter that comes to its attention that bears upon the question of defendant's sanity or his competency to stand trial. At times, it may be that the fact that proffered testimony is hearsay would warrant a rejection of it as incredible, but this would not always be correct. For instance, while a court is considering a question whether a defendant is mentally competent to stand trial, a recent written report of an eminent physician, a specialist in mental disorders, to the effect that he has carefully examined defendant and found him to be an idiot, should not be rejected merely because it is in hearsay form, especially if the court had no reason to question the authenticity of the report. The usability of reports of experts, without the attendance in court of the expert in connection with proceedings under Code of Alabama, Title 15, § 426, is vivified by the provision thereof as follows:
 ". . . When the superintendent of the hospitals shall be of the opinion that such person is so restored he shall forthwith, in writing, inform the judge and sheriff of such court of the fact, whereupon such person must be remanded to prison on an order of such judge, and the criminal proceedings resumed. . . ."
Our review of the record convinces us that, although the report of the psychometrist was entitled to consideration by the trial judge in the absence of any challenge to its authenticity or reliability, the trial court did in effect consider it in the conclusion it reached in denying defendant's motion "for a judicial determination of the mental competency of the defendant." Defendant's counsel made it clear to the court that he had nothing upon which to base the motion other than the report of the psychometrist. During the colloquy among the court, counsel for defendant and counsel for the State, the trial court stated:
 "Assuming for the sake of argument that it would be admissible, and I know what counsel has said as to its contents, there would be nothing in what counsel has *Page 1065 
stated thus far that would tend to prove that the person was mentally incompetent, as far as the criminal culpability under Alabama law is concerned."
Thereafter counsel for defendant correctly distinguished between mental competency to commit a crime and mental competency to stand trial, and subsequently the court said:
 "However, the statute, as I recall the statute to which you refer, there must be a showing from which the Court would conclude that such a determination would be indicated."
As we view the record, the trial court concluded that the report of the psychometrist, which is made a part of the record and which was exhibited to the trial court, was not sufficient to cause the trial court to have reasonable ground to doubt defendant's sanity, or his mental competency to stand trial.
That a defendant is put to trial without a judicial determination of his sanity, or his mental competency to stand trial, is not ground for a reversal of a conviction. In such an event, the appropriate procedure is for judgment to be suspended and the case remanded to the trial court for a determination thereof, if there is sufficient basis for requiring such a determination. Edgarson v. State, 53 Ala. App. 581, 302 So.2d 556; Pierce v. State, 52 Ala. App. 422,293 So.2d 483, writ quashed, 292 Ala. 745, 293 So.2d 489, judgment vacated after remand, 57 Ala. App., 633, 330 So.2d 615; Buttramv. State, 57 Ala. App. 422, 329 So.2d 111, after remand,57 Ala. App. 425, 329 So.2d 114, cert. denied, 295 Ala. 394,329 So.2d 116. In Buttram, appellant is the same appellant as here. According to the undisputed evidence, he had, on the same general occasion, killed H.W. Culpepper, as charged in this case, and James R. Williams, as charged in the other Buttram
case by shooting them separately, for which separate indictments were brought against him and separate trials were conducted. For killing Williams, he was found guilty of murder in the second degree and sentenced to imprisonment in the penitentiary for twenty years. Defendant had moved somewhat in accord with his motion in this case, as to which apparently there was no hearing but a ruling by the court as follows:
 "The defendant's motion requesting an examination by a physician is denied."
We thought that the evidence on the trial of the case gave rise to a serious question whether the trial court should have had "reasonable ground" to doubt his sanity, and remanded the case for a determination thereof. In compliance with directions, the trial court conducted a hearing and, before making a determination, had defendant admitted to Bryce Hospital for an examination and evaluation "as to the defendant's competency to stand trial on December 19, 1974, and, additionally, his present competency to stand trial." A written report was submitted by Dr. Jerold S. Lower, Clinical Coordinator, Forensic Program, at Bryce Hospital, stating that the Forensic Evaluation Board had determined that "there is no evidence of [Mr. Buttram's] having a degree of disturbance sufficient to destroy or impair his competency or his criminal responsibility, either presently or at any time in the past. He should be promptly returned to the judicial system." We cannot ignore, and we take judicial notice of, for the purpose at hand, the record before us in the other Buttram case. Jones v.State, 48 Ala. App. 32, 261 So.2d 451.
A suspension of the judgment of conviction and a remand to the trial court to determine whether defendant was competent to stand trial at the time of the trial in instant case is not justified for the following separate and distinct reasons: (1) The trial court evidently concluded that the intelligence quotient test report was not in and of itself sufficient to create a reasonable doubt as to defendant's competency to stand trial, and we cannot find that the trial court was in error in such conclusion, (2) there is no reason to believe that further consideration of the question by the trial court in the light of all available evidence, or indications, on the point would lead to reasonable doubt as to defendant's competency to stand trial and (3) appellant does *Page 1066 
not request that the case be remanded to the trial court for a determination of his mental competency to stand trial at the time of the trial. We can see that such a request, if granted, would not necessarily be to the best interest of defendant, as he has now served approximately one third of his sentence.
During the closing argument of counsel for the State, the following occurred:
 "(Thereupon, the following objection was made at a point during Mr. Black's closing statements to the jury.)
 "MR. NELSON: Your Honor, we object; there was no testimony they were out there at the request of Mrs. Buttram.
 "THE COURT: Just a minute. I don't recall the testimony you have reference to, counselor.
 "MR. NELSON: Mr. Black said he submitted they were there at the request of Mrs. Buttram, and there was no testimony to that effect.
"THE COURT: Overruled.
"MR. NELSON: We except."
Appellant insists that the ruling of the court was erroneous. We might be justified in upholding the ruling of the court, on the ground that the argument of counsel for the State is not sufficiently set forth to enable us to determine what was really said. In Johnson v. State, 35 Ala. App. 645,51 So.2d 901, it was stated:
 "`In order for this court to intelligently pass upon the question, enough of the remarks of the solicitor must be incorporated in the record to inform the court as to what was really said, and not mere[ly] disjointed sentences of the solicitor's speech.' Gray v. State, 19 Ala. App. 550, 98 So. 818, 819; Pate v. State, 32 Ala. App. 365, 26 So.2d 214."
It is not necessary, however, for us to apply the principle here. What we have before us shows that counsel for the State was arguing inferentially only and was not making a statement of a substantive, outside fact, stated as a fact. The two men killed were at Mrs. Buttram's house. They were there before defendant arrived with his girl friend. The two were in the kitchen with Mrs. Buttram, sitting around the kitchen table with Mrs. Buttram, and drinking beer at the time defendant and his girl friend arrived at the house a short while before he shot Culpepper and Williams. There was evidence to the effect that after the argument commenced between defendant and one of the victims, Mrs. Buttram told defendant that he should have known better than to bring someone like Williams to her house and that she ordered the two men to leave. Before the argument started, however, the evidence indicated that the two men were guests in Mrs. Buttram's home, where they sat around the kitchen table with her and drank beer. It would be an unreasonable restriction upon counsel for the State not to be able to argue, as distinguished from stating as an out-of-the-record fact, that the victims were not intruders or trespassers, but that they were in the kitchen of appellant's mother as her guests, that they were there at her request, express or implied. Counsel should be allowed considerable latitude in drawing their deductions from evidence and argument to the jury. Espey v. State, 270 Ala. 669, 120 So.2d 904; Cosbyv. State, 269 Ala. 501, 114 So.2d 250; Cronnon v. State,56 Ala. App. 192, 320 So.2d 697, cert. denied, 294 Ala. 756,320 So.2d 709; Edson v. State, 53 Ala. App. 460, 301 So.2d 226.
We have considered all contentions made by appellant and have searched the record for error prejudicial to defendant. We conclude that the evidence justified the verdict of the jury, that no error prejudicial to defendant occurred on the trial or in any of the proceedings in the trial court, and the judgment should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. Clark, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court, and the judgment of the trial court is hereby
AFFIRMED.
All the Judges concur, except CATES, P.J., who was not sitting. *Page 1243