TYSON, Judge.
Luke Lawrence, Jr., was indicted by the grand jury for manslaughter in the first degree in that he “unlawfully and intentionally, but without malice, killed Charles Manzella by driving an automobile into, upon or against an automobile in which said Charles Manzella was riding” (R. 169). At trial appellant was found guilty as charged and his sentence was fixed by the jury at two years in the state penitentiary. He was sentenced accordingly. Lawrence prosecutes this appeal with the aid of appointed counsel.
Charles Manzella was killed in a head-on collision during the late afternoon of February 25, 1979, while he was driving on Interstate 59 in Birmingham, Alabama. Jeanette Manzella, decedent’s wife, testified that she last saw her husband alive that afternoon as he left in his “maroon” or “wine colored” Pontiac Grand Prix on the way to a movie. She stated that she later viewed his body at a local funeral home.
J. M. Glass, chief medical investigator for the Jefferson County Coroner-Medical Examiner’s Office, testified that, on February 26, 1979, he had occasion to perform the autopsy on the deceased. Mr. Glass related that his examination revealed multiple “blunt-force type injuries” (R. 19), including fractures of the skull, ribs, leg, and other bones, extensive internal damage, and numerous abrasions and similar injuries; these various injuries were the direct cause of death, and Mr. Glass stated that such injuries were consistent with those present in victims of head-on automobile collisions.
Patrick Rhodes, an accident investigator with the Birmingham Police Department, testified that, on the date in question, he had received a radio call to proceed to the scene of an accident on 1-59 between the Tallapoosa and Airport exits, and that he arrived within a few minutes of the call. The witness identified numerous photographs which he had taken as correctly portraying the scene of a collision between a maroon or dark red Pontiac Grand Prix and a yellow or cream Ford Elite. Both vehicles were in the north bound lane of 1-59. Officer Rhodes stated that, upon his *319 arrival at the scene, he attempted to administer aid to the decedent, who was trapped behind the steering wheel of the Grand Prix, but that the victim was either dead or died before paramedics arrived. The officer made an in-court identification of appellant as the other victim whom he examined, and stated that appellant was still in his Ford Elite in an unconscious state. During the process of examination, Officer Rhodes testified that he smelled the odor of “alcohol beverage” (R. 46) about appellant. Officer Rhodes further stated that he talked with both Kevin Darden, a witness to the collision, and Carmen Cartee, the driver of a third vehicle involved in the wreck. At some point after the collision, Officer Rhodes transported several vials of appellant’s blood from the hospital to an employee of the State Department of Forensic Sciences.
Kevin Darden, a student at the University of Alabama in Tuscaloosa, testified that, on the late afternoon of February 25, 1979, while driving from Tuscaloosa to Birmingham on Interstate 20, he had the occasion to see a cream colored Ford Elite parked in the median some ten miles from the scene of the wreck. As he neared the car, Mr. Darden stated, it suddenly pulled into the lane of traffic very near to a group of on-coming cars, causing them “to apply their brakes.” The witness followed the Ford to Birmingham, at times noticing the Ford “swerving back and forth and on the highway from one shoulder to another, and completely off the road at times, and then back on the other side” (R. 80), and “running other people off the road” (R. 80). The witness judged the Ford’s speed to be between 55 and 60 miles per hour. He followed the car off of 1-20 into a commercial area near where 1-20 and 1-59 again intersect in Birmingham, and stated that, while there were a number of traffic lights, he did not observe the Ford run any red lights. Mr. Darden then followed the Ford back onto 1-59 South, where the car “continued the same type of driving that it had been” (R. 82), that is, “swerving and running people off the road” (R. 82). This witness estimated the Ford’s speed at this point to be between 55 and 60, increasing to between 75 and 80 as it neared the airport. The witness further stated that he next saw the Ford “sideswipe” a car, proceed across the median, and run head-on into a burgundy Grand Prix in the north-bound lane.
Mr. Darden testified that, after seeing this, he immediately stopped his own car on the side of the highway and went to the scene of the collision on foot. He stated that he had received a good deal of training in first aid and emergency medical techniques, and thus sought to render assistance. He examined both the occupant of the Grand Prix, who was pinned in his car, and the occupant of the Ford, who was lying unconscious, Mr. Darden stated about, three feet from the Ford. Darden stated that he smelled the odor of alcohol about the occupant of the Ford, and made a positive identification of appellant as the occupant. Though the witness was unable to testify that appellant was the actual driver of the Ford, he did state that, in following the Ford, he noticed that it had one occupant, who was black, and that he never saw the car stop and take on other passengers. Appellant is a black male.
Carmen Cartee testified that, on the date in question, she was driving on 1-59 South between the Tallapoosa and Airport exits when she was involved in a collision with another vehicle. The witness stated that she had looked in her rear view mirror and had seen a “yellow Ford” (R. 110), which was “swerving all over the interstate” (R. 110), and “coming up behind me real fast” (R. 110). She testified that the Ford sideswiped her car, crossed the median and struck a “maroon” car moving in the opposite direction head-on. She further stated that, prior to being struck by the Ford, she noticed that it was crossing several lanes of the interstate. She parked her vehicle in the emergency lane of 1-59 South, and did not approach the scene of the head-on collision. Ms. Cartee identified the investigating officer as Pat Rhodes and stated that she had noticed Kevin Darden at the scene.
Kathy Robinson, an emergency medical technician with a Birmingham ambulance *320 firm, testified that, on February 25, 1979, she had been summoned to the scene of a collision on 1-59 between the Tallapoosa and Airport exits. She stated that, upon arrival, she examined appellant, who was unconscious and lying outside of the Ford vehicle. She further testified that, during her examination, she smelled “the odor of alcoholic beverages” about the appellant. She accompanied appellant to the hospital in the ambulance, and stated that he never regained consciousness while in her presence.
The final witness was Chip Walls, a forensic toxicologist with the State Department of Forensic Sciences. He testified that, in early March, 1979, he had received blood samples from Officer Rhodes. He was not allowed to testify concerning any tests that he had conducted or as to the results of the tests.
The State rested, and appellant’s motion to exclude the State’s evidence was overruled. The appellant offered no witnesses and did not take the stand.
I
The sole contention is that the evidence presented is insufficient to justify a conviction for first degree manslaughter. To this end, appellant argues that he was not sufficiently identified to be the driver of the Ford, that he was not shown to be intoxicated, and that his actions were not the proximate cause of the wreck.
When a question as to the sufficiency of the evidence is raised on appeal, this Court is bound to follow the tenets of review as set forth in Johnson v. State, Ala.Cr.App., 378 So.2d 1164, 1169 (1979):
“It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt and to a moral certainty. Instead, the function of this Court is to determine whether there is legal evidence from which a jury could by fair inference find the defendant guilty. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.), cert. denied, 368 So.2d 877 (Ala.1979); Scruggs v. State, 359 So.2d 836, 842 (Ala.Cr.App.), cert. denied, 359 So.2d 843 (Ala.1978). In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State and accord the State all legitimate inferences therefrom. Ellis v. State, 338 So.2d 428 (Ala.Cr.App.1976); Edson v. State, 53 Ala.App. 460, 301 So.2d 226 (1974).”
We will not disturb a jury’s verdict where legal evidence existed from which a fair inference of the defendant’s guilt could be ascertained, unless, given all favorable inferences, the verdict is so against the preponderance of the evidence as to render it unjust. Johnson v. State, supra, and authorities therein cited.
We have examined the evidence set forth in the record and conclude that there was ample evidence from which the jury could have determined that appellant was shown to be the driver of the Ford automobile and therefore was guilty of the crime charged. The appellant’s identification, though largely uncontroverted, was properly one for the jury, cf., Rider v. State, 56 Ala.App. 137, 319 So.2d 756 (1975), as was the question of his intoxication given the testimony concerning his erratic driving habits and the smell of alcohol. Edson v. State, 53 Ala.App. 460, 301 So.2d 226 (1974); Senn v. State, 45 Ala.App. 17, 221 So.2d 693 (1969).
We need not here repeat all the evidence tending to incriminate appellant, a good portion of which has been set forth above, but conclude that, upon the evidence presented, the jury could have properly believed the appellant guilty of driving his automobile “in such a manner as to evidence a wanton and reckless disregard of human life at the time and place under the circumstances,” and that such conduct proximately caused the death of Charles Manzella. Edson v. State, supra; Baker v. State, 43 Ala.App. 550, 195 So.2d 815 (1966), cert. denied, 280 Ala. 708, 195 So.2d 818 (1967); Darby v. State, 48 Ala.App. 421, 265 So.2d 449 (1972); and Ayers v. State, 48 Ala.App. 743, 267 So.2d 533 (1972).
*321 We have carefully examined the record in this cause, and find same to be free from error; the judgment is therefore
AFFIRMED.
All the Judges concur.