Appellant Joseph Washington was indicted for murdering Sharon Mitchell and Lester Collins with a pistol. The evidence indicated that he pursued them in a car, overtook them in a parking lot of a Church's Fried Chicken Store in the Crichton section of Mobile, and shot them to death. The jury convicted Washington of these charges and he was sentenced to 99 years' imprisonment in each case, sentences to run consecutively.
 I
Appellant Washington first contends that the court should have granted a mistrial because of a remark made in summation. The remark was:
 "One thing you can do is to let the pistolmen and the gunmen know that you can [sic] execute two helpless people like bugs and then kill a witness and they can walk."
The driver of the pursuit and getaway car was understood to have been one Adam Lilly, a person of diminished mental capacity. While the accused was in jail awaiting trial, Adam Lilly was shot to death by persons unknown. Adam Lilly's death certificate was introduced into evidence at the trial and indicated gunshot wounds as the cause of death.
The state presented evidence of two persons who were in jail at the time Washington was in jail. One of them testified that Washington was looking for someone who would silence Lilly, whom Washington apparently believed was the only witness. Another testified to Washington's remarks indicating relief when he heard the witness had been shot dead.
After the statement by the prosecutor, the trial judge gave curative instructions after sustaining the appellant's objection and denying a mistrial. The court said, "We are trying only one case here, and I will so instruct the jury. Ladies and Gentlemen of the Jury, you are to disregard the last statement of the prosecutor."
The standard to be applied in testing language on a motion for mistrial is set out in Birmingham News Company v. Payne,230 Ala. 524, 162 So. 116, 117 (1935). To call for a mistrial, the argument to the jury must be (1) improper and illegal, and (2) of such prejudicial character that its probable effect is ineradicable by exclusion and rebuke on the part of the Court. We find that the trial court properly denied the motion for mistrial.
 II
The other two assignments of error also relate to the death of Adam Lilly.
The appellant contends that the court should have sustained his objection when, during summation, the following occurred:
 "[MR. COPELAND]: And there are certain things, because of our rules that we cannot present to you, but you heard Sergeant Williams —
"MR. IRBY: Your Honor —
"MR. COPELAND: — telling you —
 "MR. IRBY: — excuse me, at this time may I approach the Bench?
 "MR. COPELAND: Well, if you've got an objection, will you —
"(Off record conference).
"(At Bench; inaudible to Jury).
 "MR. IRBY: Judge, we got an objection to the District Attorney referring to the fact that under the rules of law, it is certain evidence that's — under the rules of law the Jury is being forbidden to hear certain evidence to infer *Page 1360 
some negative prejudicial remarks towards this Defendant.
 "MR. COPELAND: No, I didn't intend it that way. If it was interpreted that way, you know, I apologize.
"THE COURT: Overrule the —
 "MR. IRBY: The inference was made to the Jury and I'd just like to note it for the record.
"THE COURT: Okay. I overrule the objection."
The appellant contends that this constitutes reversible error under the case of Tillman v. State, 374 So.2d 922 (Ala.Cr.App. 1979). Tillman, however, deals with the situation where the prosecutor stated a substantive fact which was not in evidence or which would not be legal evidence if offered as such, ". . . yet which would have a natural tendency to influence the finding of the jury." Edson v. State, 53 Ala. App. 460, 463,301 So.2d 226 (1974); Cross v. State, 68 Ala. 476 (1881). The prosecutor's statement in this case did not state a fact. While the prosecutor flirts with reversal, nonetheless, under the circumstances of this case, his suggestion that there are facts he is not allowed to present to the jury, standing alone, does not justify a reversal.
 III
Appellant next contends that the death certificate of Adam Lilly should not have been admitted into evidence. It had already been testified to in the trial that Adam Lilly had been shot to death. The evidence contained on the death certificate as to the cause of death therefore was merely cumulative. The state's theory of the Washington case was that Washington considered Adam Lilly the only man who could ". . . put the hat on me." The idea of showing that he sought to procure Lilly's death and gave an expression of relief upon hearing on the radio that Lilly had, in fact, been killed were therefore relevant to this case. C. Gamble McElroy's Alabama Evidence, § 21.01(1) (3d ed. 1977), states that the test of relevancy employed in Alabama is that "fact A is relevant if there is any logical relationship between it and the ultimate inference B for which it is offered." The death certificate of Adam Lilly, therefore, did have probative value and was properly admitted. We do not consider that the prejudicial effect was so great that the trial court abused its discretion in permitting this death certificate into evidence. C. Gamble McElroy's AlabamaEvidence, § 21.01(4); § 21.01(B) (3d ed. 1977).
The judgment of the trial court is due to be affirmed.
AFFIRMED.